PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAI NARINE,

                              *Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

                              *Respondent.*

No. 08-1299

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: January 29, 2009

Decided: March 9, 2009

Before GREGORY and DUNCAN, Circuit Judges,
and Arthur L. ALARCÓN, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit, sitting
by designation.

Petition for review granted; vacated and remanded by pub-
lished opinion. Judge Gregory wrote the opinion, in which
Judge Duncan and Senior Judge Alarcón joined.

## COUNSEL

**ARGUED**: Alexandru Ionut Craciunescu, INTERNA-
TIONAL BUSINESS LAW FIRM, P.C., Washington, D.C.,

for Petitioner. Francis William Fraser, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** Steffanie J. Lewis, INTERNA-
TIONAL BUSINESS LAW FIRM, P.C., Washington, D.C.,
for Petitioner. Gregory G. Katsas, Assistant Attorney General,
Civil Division, Carl H. McIntyre, Jr., Assistant Director,
Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

---

## OPINION

GREGORY, Circuit Judge:

Petitioner Jai Narine asks this Court to review the Board of
Immigration Appeals' ("BIA") denial of his motion for recon-
sideration of its decision dismissing his appeal for lack of
jurisdiction. The BIA found that it lacked jurisdiction to con-
sider both Narine's initial appeal and his motion for reconsid-
eration because he had waived his appellate rights by
accepting voluntary departure in lieu of removal. The record,
however, clearly demonstrates that any waiver by Narine did
not meet the standard of being knowing and intelligent, and
we therefore vacate the BIA's order denying Narine's motion
to reconsider and remand this case for proceedings consistent
with this opinion.

I.

Narine, a citizen of Guyana, entered the United States via
Miami International Airport in June 2001, using fraudulent
travel documents bearing the name "Rishi Rambial." He has
since married a naturalized citizen, with whom he has one
child. Although his wife's I-130 petition for an alien relative
was approved in April 2005, Narine's own I-485 application
for adjustment of status was denied.

After the Government initiated removal proceedings against Narine in May 2005, an immigration judge ("IJ") sustained the charge of removability at a hearing held on January 11, 2006. The IJ found Narine removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(1) (2006), because he had failed to meet his burden of showing that he had been properly admitted after inspection by an immigration officer.

On April 10, 2006, the IJ held another hearing for Narine, this time to evaluate his eligibility for relief from removal. Narine brought with him a motion to withdraw representation prepared and signed by his lawyer, Steffanie Lewis. Lewis had represented Narine up to that point in his removal proceedings but she stated in her motion that Narine had asked her to withdraw "[f]or economic reasons." (J.A. 279.) The motion further stated that Lewis' firm had "counseled Mr. Narine with respect to his options in this matter as well as the penalties and limitations of accepting a grant of voluntary departure and failing to timely depart." (J.A. 280.) After presenting the IJ with Lewis' motion, Narine indicated that Lewis had advised him that his best option was to leave voluntarily and to apply for a visa after returning to Guyana.

The following colloquy between Narine and the IJ then took place:

> Q: Mr. Narine, do you intend to leave the United States?
>
> A: Yes.
>
> . . .
>
> Q. Okay. And, this is the only request that you're making on the court, right?
>
> A: Yes, Your Honor.

> Q:   And, if I grant voluntary departure today, do you intend this as the final decision in your case today?
>
> A:   No.
>
> Q:   If you say no, then you're not eligible for voluntary departure and this stays at the proceeding. My question to be clear is if I sign an order that says you can leave voluntarily do you agree that this is the end of this court case?
>
> A:   Yes.

(J.A. 285-86.) The IJ then granted Narine voluntary departure[1] over the Government's objection and asked Narine, "Do you accept this as a final order?" (J.A. 287.) Narine replied, "Yes." (*Id.*)

---

[1]The INA recognizes two types of voluntary departure. So-called "pre-conclusion voluntary departure" allows an alien charged with removability to depart the country voluntarily prior to the completion of removability proceedings, pursuant to 8 U.S.C. § 1229c(a)(1) (2006). "Post-conclusion voluntary departure" allows an IJ to enter an order granting voluntary departure at the conclusion of removal proceedings, where the conditions of 8 U.S.C. § 1229c(b) (2006) are met.

The IJ did not specify which type of voluntary departure Narine was being given, but it would seem that Narine was only eligible for post-conclusion voluntary departure because the IJ had already found him removable at his January 11, 2006, hearing. Nonetheless, in its dismissal of Narine's initial appeal, the BIA indicated that the IJ had determined that Narine was eligible for pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a) (2006). While we are not clear on what basis the BIA reached this conclusion, neither Narine nor the Government has explicitly disputed the BIA's finding that Narine was given pre-conclusion voluntary departure (although Narine argues that the IJ's decision to grant this type of voluntary departure was in error). Thus, we will assume for purposes of this petition that Narine was given pre-conclusion voluntary departure and we will use the terms "pre-conclusion voluntary departure" and "voluntary departure" interchangeably in this opinion.

On May 8, 2006, Narine, once again represented by Lewis, filed a notice of appeal with the BIA, challenging the IJ's January 11 finding of removability. The BIA dismissed the appeal for lack of jurisdiction on November 16, 2007. The Board found that Narine had "accepted [pre-conclusion voluntary departure] as the final decision in his case and waived appeal."[2] (J.A. 390.) The Board went on to say that, even though Lewis had withdrawn her representation at the time Narine was granted voluntary departure, Narine's request for voluntary departure "was at the advice of counsel and was with the respondent's understanding that this order would be final." (*Id.*)

Narine then filed a motion for reconsideration with the BIA, contesting the Board's finding that he had waived his appellate rights by accepting voluntary departure. In an affidavit attached to the motion, Lewis denied ever advising Narine about waiving his appellate rights.[3] Nonetheless, the BIA denied the motion to reconsider on February 12, 2008.

---

[2]Section 1240.26(b)(1)(i) of Title 8 of the Code of Federal Regulations specifies that pre-conclusion voluntary departure is only available where an alien:

> (A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;
>
> (B) Makes no additional requests for relief . . . ;
>
> (C) Concedes removability;
>
> (D) *Waives appeal of all issues*; and
>
> (E) Has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4).

(emphasis added). Once an alien waives his right to appeal, the BIA no longer has jurisdiction to review a decision of an IJ. *See In re Shih*, 20 I. & N. Dec. 697 (B.I.A. 1993).

[3]Lewis indicated that she believed that Narine was only eligible for post-conclusion voluntary departure, *see* footnote 1, *supra*, which does not require an alien to waive appeal, *see* 8 U.S.C. § 1229c(b) (2006); 8 C.F.R. § 1240.26(c) (2008).

Maintaining that it lacked jurisdiction to hear Narine's appeal, the BIA stated that:

> [d]uring the removal hearing before the Immigration Judge on April 10, 2006, the respondent was represented by present counsel and he expressly waived his right to appeal . . . . The Immigration Judge advised the respondent on the record that he must waive his right to appeal in order to receive preconclusion voluntary departure, and the respondent expressly waived appeal.

(J.A. 433.) Narine now timely petitions this Court for review of this denial of his motion to reconsider.

## II.

We have jurisdiction to review Narine's petition under 8 U.S.C. § 1252 (2006). We review a denial of a motion to reconsider for an abuse of discretion. *Jean v. Gonzales*, 435 F.3d 475, 481 (4th Cir. 2006). This means that we can reverse "only if the Board acted arbitrarily, irrationally, or contrary to law." *Mohammed v. Gonzales*, 400 F.3d 785, 791 (9th Cir. 2005).

Blatant factual errors in the BIA's decision provide the first indication that the BIA acted arbitrarily in denying Narine's motion to reconsider. The decision states that Narine "was represented by present counsel" at his April 10, 2006, hearing (J.A. 433), even though it is clear from the record that Narine was not represented by counsel at that hearing. In fact, it was at the April 10 hearing that Narine presented Lewis' motion to withdraw from representation. Similarly, the BIA justified its denial of Narine's motion to reconsider with the explanation that Narine had "expressly waived his right to appeal" after the IJ "advised the respondent on the record that he must waive his right to appeal in order to receive pre-conclusion voluntary departure." (*Id.*) But the word "appeal" does not

appear anywhere in the transcript of the April 10 hearing. The IJ's colloquy with Narine plainly did not include any discussion of the fact that waiver of appeal was a condition of voluntary departure. The IJ did indicate several times that her decision to grant voluntary departure would be "final," (J.A. 286-87), but this is a far cry from an express warning about waiver of appeal.

Still, we might not find an abuse of discretion if the BIA's decision to deny the motion based on a lack of jurisdiction was ultimately supported by the law. It is not. The BIA's denial stands in significant tension with both its own precedent as well as decisions of the federal courts.

An alien's waiver of his appellate rights must be "knowingly and intelligently made." *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (B.I.A. 2000) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)). The Government contends that Narine's waiver *was* knowing and intelligent because, even though he was not represented by counsel at the April 10 hearing, he had already been advised by counsel about the "limitations of accepting a grant of voluntary departure." (J.A. 280.) The Government further suggests that, by responding in the affirmative when the IJ asked him if he understood that voluntary departure was a final decision, Narine clearly indicated that he comprehended the consequences of voluntary departure.

The Government's arguments strain credulity. In her affidavit presented with Narine's motion to reconsider, Lewis explicitly denies ever discussing waiver of appellate rights with Narine in counseling him to accept voluntary departure. But, even if she had, a vague statement made in an attorney's motion to withdraw from representation would not excuse an IJ from herself discussing the particular conditions of voluntary departure with an unrepresented alien. In *In re Cordova*, 22 I. & N. Dec. 966, 971 (B.I.A. 1999), the BIA held that, where an alien is eligible for pre-conclusion voluntary depar-

ture, an IJ must "explicitly advise the alien that he or she must waive the right to appeal in order to be granted this form of voluntary departure." In a later decision emphasizing the importance of ensuring that a waiver of appeal is made explicitly in these circumstances, the BIA explained that:

> [G]iven the regulatory requirement that the right to appeal be waived [8 C.F.R. § 1240.26(b)(1)(i)] and the due process implications of construing an "implicit" waiver of the right to appeal, as well as the jurisdictional implications of a waiver itself, we find it critical that the record must clearly demonstrate that the right to appeal was actually, and not merely constructively, waived by the alien.

*In re Ocampo*, 22 I. & N. Dec. 1301, 1304 (B.I.A. 2000). The Board admitted a limited exception to that rule in cases where "the record contains a written stipulation or comparable documentary evidence wherein the respondent, or the respondent's counsel, expressly waives appeal as part of establishing that all the regulatory requirements for this form of voluntary departure have been satisfied." *Id.* at 1305. But Lewis' vague statement that she had discussed the "limitations of accepting a grant of voluntary departure" with Narine is far from sufficient to invoke *Ocampo*'s exception to the express waiver requirement.

We also cannot accept the Government's contention that Narine demonstrated a clear understanding of the consequences of accepting voluntary departure by responding affirmatively when the IJ asked if he agreed that her decision was final. The phrase "final decision" is a term of art, and it is a stretch to think that a legally unsophisticated, unrepresented, non-native English speaker would understand that by accepting a "final decision" in his case he was waiving his appellate rights. *See In re Rodriguez-Diaz*, 22 I. & N. Dec. at 1322-23.

In *Rodriguez-Diaz*, the BIA explained:

Asking the parties whether they accept a decision as "final" is a shorthand expression commonly used by Immigration Judges. . . . Those who understand the meaning of this shorthand expression, such as aliens represented by attorneys or accredited representatives, may effectively waive appeal in response to this simple question.

However, the meaning and significance of this shorthand expression may not be apparent to the unrepresented alien. Asking an unrepresented alien whether he or she accepts a decision as "final" does not necessarily alert the alien to the fact that the question concerns the right of appeal or that an affirmative answer will be construed as an irrevocable waiver of that right.

*Id.* at 1322. The BIA admitted that "the precise articulation of appeal rights required in any given case will necessarily depend on the circumstances of that case," but noted that where an alien is unrepresented, the need for an explicit explanation of a waiver of appeal rights is especially important. *Id.* at 1323; *see also Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008) (finding in a case where an alien was represented by counsel at removal proceedings that it was nonetheless unclear whether counsel understood the import of the IJ's statement that his order was "final"); *United States v. Fares*, 978 F.2d 52, 56-57 (2d Cir. 1992) (finding that an IJ's explanation to an unrepresented alien that a removal order was "final" did not suffice to show that the alien understood that he had waived his right to appeal that order).

While *Rodriguez-Diaz* suggests that, in some circumstances, use of the shorthand expression "final decision" might be sufficient to effect a knowing and intelligent waiver, it is clear that the same factors which led the BIA to find the waiver insufficient in *Rodriguez-Diaz* are also at play here. *See* 22 I. & N. Dec. at 1322-23. The IJ never explained that

Narine would be waiving his right to appeal by accepting voluntary departure, and at no point in her colloquy with Narine did the IJ discuss Narine's appellate options. Furthermore, Narine was a legally unsophisticated party who was not represented by counsel and could not be expected to understand the implication of the IJ's shorthand use of the word "final."

### III.

Because the record demonstrates that Narine did not knowingly and intelligently waive his right to appeal before the IJ, we find that the BIA abused its discretion in denying Narine's motion to reconsider for lack of jurisdiction. Accordingly, we grant Narine's petition for review, vacate the BIA's order denying Narine's motion to reconsider, and remand to the BIA for further proceedings consistent with this decision.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*