**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1175**

DANIEL GEMECHU SHANTU,

                    Petitioner,

          v.

LORETTA E. LYNCH, Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  March 24, 2016                  Decided:  July 13, 2016

Before KING, DIAZ, and HARRIS, Circuit Judges.

Petition for review granted; vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED:** Alan M. Parra, LAW OFFICE OF ALAN M. PARRA, Silver Spring, Maryland, for Petitioner.  Rachel Louise Browning, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Blair O'Connor, Assistant Director, Civil Division, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

When an alien's application for asylum is denied on discretionary grounds but the same alien is granted withholding of removal, 8 C.F.R. § 1208.16(e) provides that "the denial of asylum shall be reconsidered," in light of certain enumerated factors. Petitioner Daniel Gemechu Shantu finds himself in precisely this position, and he contends that the Board of Immigration Appeals ("BIA" or "Board") has not reconsidered his asylum application as required by the regulation. Shantu filed a motion for reconsideration with the BIA on that basis, which the agency denied.

We agree that Shantu's asylum claim has not yet received reconsideration under 8 C.F.R. § 1208.16(e), and, for that reason, we find that the BIA abused its discretion when it denied Shantu's motion. Accordingly, we vacate the Board's decision and remand this matter to the agency.

**I.**

**A.**

Petitioner Shantu is a native and citizen of Ethiopia. Shantu was persecuted in his home country on account of his Oromo ethnicity and his religion, and he was subjected to multiple detentions, beatings, and arrests.

2

Traveling on a student visa, Shantu left Ethiopia in August of 2004 to attend a graduate program in theology in Norway. He returned to Ethiopia about a year later to do research related to his degree and to marry his fiancée, who was still living in the country. At Shantu's wedding on October 15, 2005, a family friend who was also an opposition leader made a speech that touched on political issues. Shantu and his wife were arrested eleven days later, and although Shantu's wife was soon released, Shantu was detained, tortured, and beaten until December 5, 2005.

Shantu and his wife immediately left Ethiopia for Norway, departing on December 8, 2005. Shantu's wife traveled on a "family reunification visa," which Shantu had obtained for her before leaving Norway. But Shantu left Norway again on July 20, 2006, before completing his degree, to come to the United States. He was admitted to the United States on a nonimmigrant business visitor visa, which he overstayed. Shantu submitted a timely application for asylum, withholding of removal, and Convention Against Torture ("CAT") protection.

Shantu's wife visited him in the United States in 2007, and he has not seen her since. On April 7, 2008, she gave birth to their son, whom Shantu has never met. Shantu's wife became a student in Norway and remained there on a student visa, which,

3

according to Shantu, has now expired.  Shantu has never applied for asylum in Norway.

**B.**

To be eligible for asylum in the United States, an applicant must establish that he is a "refugee," 8 U.S.C. § 1158(b)(1)(A) — that is, that he is unwilling or unable to return to his country of citizenship "because of persecution or a well-founded fear of persecution on account of" a protected characteristic like religion or "membership in a particular social group," id. § 1101(a)(42).  Even then, however, a refugee is only "'eligible for asylum,' which the Attorney General (or his or her designee) 'in his [or her] discretion' may grant." Zuh v. Mukasey, 547 F.3d 504, 507 (4th Cir. 2008) (alteration and emphasis in original) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 443 (1987)); see 8 U.S.C. § 1158(b)(1)(A).

Discretionary denials of asylum are "'exceedingly rare' and are generally based on egregious conduct by the applicant." Zuh, 547 F.3d at 507 (quoting Huang v. INS, 436 F.3d 89, 92 (2d Cir. 2006)).  "The exercise of discretionary judgment with respect to a refugee's asylum claim," we have explained, "should include the examination of 'a totality of the circumstances' in view of the BIA's policy that '[t]he danger of persecution will outweigh all but the most egregious of adverse factors.'" Dankam v. Gonzales, 495 F.3d 113, 119 n.2 (4th Cir. 2007)

4

(alteration and emphasis in original) (quoting Huang, 436 F.3d at 98). In Zuh, we articulated a non-exhaustive list of factors to be balanced as part of the consideration of the "totality of the circumstances." 547 F.3d at 510–11. "On the positive side," we explained, an IJ should weigh:

> 1) Family, business, community, and employment ties to the United States, and length of residence and property ownership in this country;
>
> 2) Evidence of hardship to the alien and his family if deported to any country, or if denied asylum such that the alien cannot be reunited with family members (as derivative asylees) in this country;
>
> 3) Evidence of good character, value, or service to the community, including proof of genuine rehabilitation if a criminal record is present;
>
> 4) General humanitarian reasons, such as age or health;
>
> 5) Evidence of severe past persecution and/or well-founded fear of future persecution, including consideration of other relief granted or denied the applicant (e.g., withholding of removal or CAT protection).

Id. at 511. And "[o]n the negative side," an IJ should consider the:

> 1) Nature and underlying circumstances of the exclusion ground;
>
> 2) Presence of significant violations of immigration laws;
>
> 3) Presence of a criminal record and the nature, recency, and seriousness of that record, including evidence of recidivism;

5

4) Lack of candor with immigration officials, including an actual adverse credibility finding by the IJ;

5) Other evidence that indicates bad character or undesirability for permanent residence in the United States.

Id. We emphasized that "an IJ need not analyze or even list" every one of the enumerated factors, "[b]ut at the very least, an IJ must demonstrate that he or she reviewed the record and balanced the relevant factors" and must also "discuss the positive or adverse factors that support his or her decision." Id. (emphasis in original).

As rare as a discretionary denial of asylum may be, it is "even more rare" when the same applicant is granted withholding of removal. Id. at 507. That is because withholding of removal requires a more demanding showing than asylum: The applicant must establish by the preponderance of the evidence that his "life or freedom would be threatened" on account of a protected characteristic if he were deported to his home country. See 8 U.S.C. § 1231(b)(3)(A); Zuh, 547 F.3d at 507 & n.2. If the applicant makes this showing, the government must withhold deportation. 8 U.S.C. § 1231(b)(3)(A). But unlike an award of asylum, withholding of removal does not permit the applicant to become a lawful permanent resident or to bring his family to the United States, and it leaves him "subject to deportation to a willing third country." Zuh, 547 F.3d at 508 (citing Huang, 436

6

F.3d at 95).    For that reason, we have made clear that a discretionary denial of asylum coupled with a grant of withholding of removal leaves an applicant in an "unusual legal status" and generally is justified only by especially "egregious negative activity" by the applicant.    Id. at 507–08 (citation and internal quotation marks omitted).

Consistent with this understanding, the regulation at 8 C.F.R. § 1208.16(e)[1] — upon which we relied in Zuh, 547 F.3d at 510 — "provide[s] special and unusual rights to an alien who has been denied asylum" on discretionary grounds but granted withholding of removal, Huang, 436 F.3d at 92.    Specifically, 8 C.F.R. § 1208.16(e) states:

> In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered.    Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

---

[1] Shantu's motion for reconsideration relied on both 8 C.F.R. §§ 208.16(e) and 1208.16(e), which are identical regulations.    "As applied to the BIA," however, "8 C.F.R. § 208.16(e) . . . is actually designated at 8 C.F.R. § 1208.16(e)."    Huang, 436 F.3d at 90 n.1.    Accordingly, we refer only to 8 C.F.R. § 1208.16(e) in this opinion.

7

The application of this regulation to Shantu's case is at issue here.

## C.

Shantu's application for asylum, withholding of removal, and CAT protection was referred to immigration court, and Shantu appeared before an Immigration Judge ("IJ") in Baltimore, Maryland. Shantu admitted that he was a removable alien and presented three witnesses, as well as his own testimony, in support of his claims.

On August 2, 2007, the IJ issued a decision denying Shantu's application for asylum but granting him withholding of removal.[2] The IJ found the testimony of Shantu and his three witnesses credible and concluded that Shantu had suffered past persecution and possessed a well-founded fear of future persecution. He also found that Shantu had not been "firmly resettled" in Norway. J.A. 127. But despite the fact that Shantu was eligible for asylum, the IJ denied Shantu's asylum application in an exercise of discretion.

The IJ based the discretionary denial of asylum on two factors. First, the IJ found that Shantu had engaged in "forum shopping" by "com[ing] to the United States seeking asylum in

_____

[2] The IJ found that Shantu's application for CAT protection was mooted by the grant of withholding of removal and Shantu does not contest this conclusion.

8

this nation rather than seeking protection" in Norway, where "he clearly was permitted to be." J.A. 127. The IJ concluded that Shantu "should not be rewarded as a matter of discretion for forum shopping when he clearly was safe in Norway." J.A. 128. Second, the IJ found that Shantu had lied to immigration officials when he obtained a visitor visa because he came to the United States with the intention of seeking asylum here.

The IJ did find, however, that Shantu was eligible for withholding of removal because it was "more likely than not, given the past history, that [his] life or freedom [would] be placed in danger if he were to be required to return to Ethiopia." J.A. 128. The IJ did not then reconsider the denial of asylum or contemplate the effect that the "unusual legal status" of being granted withholding of removal but denied asylum would have on Shantu's ability to reunite with his wife. See Zuh, 547 F.3d at 508 (quoting Huang, 436 F.3d at 95); see also 8 C.F.R. § 1208.16(e).

Shantu appealed the IJ's decision to the Board of Immigration Appeals and, on April 24, 2009, a single member of the Board dismissed the matter. The Board's decision first noted its obligation under In re Pula, 19 I. & N. Dec. 467, 473 (B.I.A. 1987), to examine the "totality of the circumstances" in making a discretionary asylum decision. Next, the Board acknowledged Zuh, which we decided after the IJ issued his

9

opinion but before the BIA ruled on Shantu's appeal. The Board listed some of the factors enumerated in that opinion, including "evidence of hardship to the alien and his family if deported to any country, or if denied asylum such that the alien cannot be reunited with family members"; "evidence of good character"; "general humanitarian reasons"; "evidence of severe past persecution or a well-founded fear of future persecution"; "lack of candor with immigration officials"; "presence of a criminal record or significant violations of immigration laws"; and "other evidence of bad character or undesirability for permanent residence in the United States." J.A. 95.

But the Board did not apply most of these factors to Shantu's personal circumstances or weigh the positive considerations against the negative ones. Rather, the Board simply adopted and affirmed the IJ's decision. The Board agreed with the IJ that Shantu had found "safe haven" in Norway and saw no evidence that Shantu could not return there. The Board further noted that Shantu's family ties were in Norway because his wife was still there. And the Board agreed with the IJ's findings that Shantu had engaged in forum shopping by choosing to apply for asylum in the United States, and that Shantu had lied to immigration officials to obtain a visa. Finally, and "very importantly," J.A. 96, the Board relied on the fact that Shantu had been granted withholding of removal as a factor

10

supporting the discretionary denial of asylum, in that it protected Shantu from further persecution in Ethiopia.

Shantu did not seek direct review of the Board's 2009 decision, but on May 18, 2010, he filed a motion asking the BIA to reopen his case under its sua sponte authority. See 8 C.F.R. § 1003.2(a). Shantu explained that his wife was unable to sponsor him for a family reunification visa in Norway because he had already sponsored her for one, and that his inability to reunite with his wife and son was causing hardship for his family. The same single member of the Board denied the motion on March 16, 2011, finding that Shantu had not shown that his circumstances were "materially different" than before. J.A. 66.

Shantu subsequently obtained new counsel and, on September 15, 2014, he filed a motion to reconsider the discretionary denial of asylum under 8 C.F.R. § 1208.16(e), the regulation directly at issue here. He argued that neither the IJ nor the BIA had meaningfully examined whether he could be reunited with his family in light of the grant of withholding of removal, as required by the regulation, and that the IJ had just assumed, without factual basis, that he could return to Norway. He also stated that his Ethiopian passport had expired, and that his wife's and son's temporary Norwegian visas had also expired. And he produced evidence that he had attempted to obtain a visa to return to Norway, but his application was denied because he

11

did not have a valid United States travel document — a result of his withholding of removal status. Finally, Shantu argued that the previous decisions in his case were legally erroneous because the IJ and BIA had improperly relied on the finding that Norway was a "safe haven," and had failed to properly weigh the factors outlined in Zuh.

The same single member of the Board denied Shantu's motion for reconsideration on January 27, 2015. The Board noted that 8 C.F.R. § 1208.16(e) "require[s] reconsideration of any discretionary denial of asylum when the alien is subsequently granted withholding of removal, and directs consideration of factors including the reasons for the denial of asylum and available alternatives for family reunification." J.A. 3. The Board also noted that the expiration of visas and passports was "an ordinary occurrence with the lapse of time," and that Shantu had failed to address his "lack of candor to immigration officials under which discretionary asylum was properly denied." Id. Finally, the Board stated that "the factors prescribed by regulation and Zuh v. Mukasey" had already been "properly considered" by the IJ and the Board in the three previous decisions. Id. (citation omitted). Accordingly, the motion for reconsideration was denied.

Shantu filed a timely petition for review of the BIA's denial of his motion for reconsideration.

12

We first consider the requirements of the regulation at the heart of this case, 8 C.F.R. § 1208.16(e).  The provision states that a discretionary denial of asylum "shall be reconsidered" in the event that the applicant is "subsequently granted withholding of deportation or removal," because this rare situation "effectively preclud[es] admission of the applicant's spouse or minor children following to join him or her."  8 C.F.R. § 1208.16(e).  Among the "[f]actors to be considered" upon reconsideration are "the reasons for the denial" and the "reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country."  Id.

Neither the BIA nor the federal courts have had much occasion to interpret 8 C.F.R. § 1208.16(e), perhaps because the situation to which the regulation applies hardly ever arises. See Zuh, 547 F.3d at 507 (noting that a discretionary denial of asylum is "exceedingly rare" and that a grant of withholding of removal to someone denied discretionary asylum is "even more rare" than that).  As the Board itself acknowledged in this case, however, it is clear that the regulation makes "reconsideration" mandatory.  And the meaning of the word "reconsideration" is plain enough.  See Dickenson-Russell Coal Co. v. Sec'y of Labor, 747 F.3d 251, 258 (4th Cir. 2014) ("The

13

plain meaning of language in a regulation governs unless that meaning would lead to absurd results." (quoting Forest Watch v. U.S. Forest Serv., 410 F.3d 115, 117 (2d Cir. 2005))). The regulation clearly mandates that a discretionary denial of asylum be reexamined if withholding of removal is granted, in light of the enumerated considerations.

But beyond this basic requirement, the meaning of 8 C.F.R. § 1208.16(e) is less clear. For instance, it is not apparent from the provision's text when in the asylum adjudication process the required reconsideration must occur, or who — the Board or an IJ — must do the reconsidering. And as the Second Circuit has observed, the regulation also "does not specify the mechanism that initiates review — i.e., by motion, through direct appeal, or as a result of the BIA's own initiative." Huang, 436 F.3d at 93.

Both the Second Circuit and the BIA have considered some of these questions, at least in passing, although neither has definitively resolved them. In Huang, the Second Circuit rejected the government's contention that 8 C.F.R. § 1208.16(e) "place[d] a duty solely on [a] petitioner to move for reconsideration, as opposed to requiring the BIA (or the IJ for that matter) to reconsider any denial of asylum sua sponte." Id. at 93. The court then held that a petitioner is not required to bring a motion for reconsideration under 8 C.F.R.

14

§ 1208.16(e) — but it did not rule out the possibility that a petitioner could bring such a motion. See id. at 93–94. In addition, the court observed that the command "'the denial of asylum shall be reconsidered'" is phrased in the passive voice, and that, "[r]ead normally, the passive voice in such a phrase mandates action by the party which previously had acted, i.e., the BIA." Id. at 93 (emphasis in original) (quoting 8 C.F.R. § 1208.16(e)). But the following year, the Board said — without analysis or discussion — that, "[u]nder 8 C.F.R. § 1208.16(e) (2006), when an alien is denied asylum solely in the exercise of discretion but is subsequently granted withholding of removal, the Immigration Judge must reconsider the denial of asylum." In re T- Z-, 24 I. & N. Dec. 163, 176 (B.I.A. 2007). Taken together, these opinions suggest that either the Board or an IJ is authorized to provide the reconsideration required under 8 C.F.R. § 1208.16(e), either sua sponte or in response to a motion.

In this case, the government appears to have taken an approach different from the one it advanced in Huang. Though it did not address the matter in its brief, at oral argument the government asserted that 8 C.F.R. § 1208.16(e) is intended to trigger "automatic reconsideration" by the IJ at the time of initial review of an asylum application. As a procedural matter, according to the government, the regulation does not

15

give the Board authority to reconsider a denial of asylum after a case is closed; such reconsideration may proceed only under a different regulation, 8 C.F.R. § 1003.2.[3]

We need not, and do not, consider arguments raised for the first time at oral argument. See W. Va. CWP Fund v. Stacy, 671 F.3d 378, 389 (4th Cir. 2011). But to the extent the government has suggested that Shantu's motion under 8 C.F.R. § 1208.16(e) was improper, we note that the Board took no issue with Shantu's procedural choice and did not deny his motion on that basis. And perhaps for that reason, the government expressly stated at oral argument that it was not seeking dismissal on jurisdictional grounds, but rather explaining its interpretation of a rarely-invoked regulation. Finally, given that neither the BIA nor any court has adopted the government's latest position — which is directly contrary to the one it advanced in Huang, when it argued that "reconsideration" under 8 C.F.R. § 1208.16(e) could proceed only on a separate motion by the applicant, see

---

[3] This provision authorizes the Board to, "at any time[,] reopen or reconsider on its own motion any case in which it has rendered a decision," and it outlines the requirements for a motion for reconsideration filed by a party. 8 C.F.R. § 1003.2(a)-(b). The government noted in its brief that a motion to reconsider under 8 C.F.R. § 1003.2(b) must be filed within 30 days of the Board's final decision, but it waived reliance on this requirement, conceding that the time limit was "not a basis for the Board's decision" to deny reconsideration in this case. Gov't Br. at 22 n.5; see also 8 U.S.C. § 1229a(c)(6)(B).

436 F.3d at 93 — we observe that Shantu had every reason to believe he was entitled to file a motion for reconsideration pursuant to that regulation.

We need not delve further into the questions surrounding 8 C.F.R. § 1208.16(e) to resolve this case. Regardless of whether it was the Board or the IJ that was required to reconsider Shantu's application for asylum, or precisely how and when that reconsideration was to take place, the unambiguous and fundamental command of 8 C.F.R. § 1208.16(e) is that there be some reexamination of a discretionary denial of asylum when withholding of removal is granted, under the factors set out in the regulation. And as we discuss below, that requirement was not satisfied here.

## III.

### A.

We have jurisdiction to review Shantu's petition under 8 U.S.C. § 1252. We assume without deciding that the Board's decision may be reviewed only for an abuse of discretion, as the government contends.[4] Accordingly, we will reverse the Board's

---

[4] This is the standard of review that applies to a motion for reconsideration brought under 8 C.F.R. § 1002.3, see Narine v. Holder, 559 F.3d 246, 249 (4th Cir. 2009), and Shantu has not argued that a different standard should apply here.

17

denial of Shantu's motion for reconsideration "only if the Board acted arbitrarily, irrationally, or contrary to law." Narine v. Holder, 559 F.3d 246, 249 (4th Cir. 2009) (quoting Mohammed v. Gonzales, 400 F.3d 785, 791 (9th Cir. 2005)).

**B.**

We find that the Board abused its discretion when it denied Shantu's motion for reconsideration. The Board denied the motion based on its conclusion that "the factors prescribed by regulation and Zuh v. Mukasey were properly considered by the Immigration Judge and the Board in prior decisions." J.A. 3 (citation omitted). But an examination of the BIA's and IJ's "prior decisions" reveals this determination to be contrary to law. We are mindful, of course, that our review is limited to the Board's January 27, 2015 decision denying Shantu's motion for reconsideration; the BIA's earlier decisions were not timely appealed. But because that 2015 decision expressly incorporates and relies upon the Board's and IJ's previous decisions, we can determine whether the Board abused its discretion in 2015 only by examining its prior reasoning. See Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009) ("[A]n administrative order," including one of the BIA, "cannot be upheld unless the grounds upon which the agency acted . . . were those upon which its action can be sustained." (quoting SEC v. Chenery Corp., 318 U.S. 80, 95 (1943))).

18

First, there can be no doubt that the IJ did not reexamine his own discretionary denial of asylum after granting Shantu withholding of removal, as the government suggests 8 C.F.R. § 1208.16(e) required him to do. The IJ considered Shantu's asylum application only once in his sixteen-page opinion, and he did so in the paragraphs preceding the grant of withholding of removal. And at no point did the IJ address most of the factors enumerated by 8 C.F.R. § 1208.16(e). He made no mention of 8 C.F.R. § 1208.16(e) itself, nor did he address the hardship that Shantu's unusual immigration status might place on his family. Rather, he simply concluded that Shantu's "forum shopping" and dishonesty when obtaining his visa precluded a discretionary grant of asylum.

The Board did not provide the reconsideration required by 8 C.F.R. § 1208.16(e), either. The Board issued its 2009 opinion rejecting Shantu's appeal of the IJ's determination after we decided Zuh, which clarified our view that the decision to grant withholding of removal while denying discretionary asylum is typically justified "only when the Government has demonstrated egregious negative activity by the applicant." 547 F.3d at 507. Yet although the Board acknowledged the factors we enumerated in Zuh, it did not apply them to Shantu's particular case, balance them, or consider whether any misconduct by Shantu was, in fact, "egregious." Rather, the Board simply affirmed the IJ's

19

decision, concluding that Shantu had found "safe haven" in Norway and had "family ties" there, that Shantu had engaged in impermissible "forum shopping," and that Shantu had "lied to immigration officials" to obtain his United States visa. J.A. 95-96.

Finally, in the brief decision denying Shantu's motion to reopen, the Board incorrectly stated that "the factors considered by the Immigration Judge complied with law in the United States Court of Appeals for the Fourth Circuit," and declined to "further consider the denial of [Shantu's] application for asylum." J.A. 66. The Board's express refusal to "further consider" Shantu's case cannot constitute the "reconsideration" required by 8 C.F.R. § 1208.16(e).

Accordingly, we find that neither the IJ nor the Board provided the reconsideration of Shantu's asylum application that 8 C.F.R. § 1208.16(e) requires, and that the Board's determination otherwise was contrary to law and an abuse of discretion. See Narine, 559 F.3d at 249. We therefore remand this matter to the BIA so that Shantu's asylum application may be reconsidered in light of the requirements of 8 C.F.R. § 1208.16(e) and the law of this Circuit. See Cordova v. Holder, 759 F.3d 332, 338 (4th Cir. 2014) ("[W]hen a BIA order does not demonstrate that the agency has considered an issue, the proper course, except in rare circumstances, is to remand to

20

the agency for additional investigation or explanation."
(quoting Nken, 585 F.3d at 822)). We reiterate our view that
Shantu's current immigration status is disfavored and justified
only by "egregious negative activity." Zuh, 547 F.3d at 507.

## IV.

### A.

Although the BIA must determine how best to proceed with
this case on remand, we offer a few additional observations that
might inform the agency's reconsideration. First, we note that
the Board's 2009 decision relies on the suggestion in In re Pula
that a grant of withholding of removal makes the denial of
discretionary asylum more justifiable, given that the applicant
will not be deported into harm's way. See 19 I. & N. Dec. at
474. But in Zuh, we made it clear — relying in part on
§ 1208.16(e) itself[5] — that the opposite is true: The government
needs an especially compelling reason to deny discretionary
asylum to a refugee who meets the high standard for withholding
of removal, given the disfavored nature of that status. 547
F.3d at 507–08, 510. To the extent that In re Pula and Zuh
conflict, the Board of course is bound by our ruling in Zuh.

---

[5] In Zuh we cited 8 C.F.R. § 208.16(e), 547 F.3d at 510,
but, again, that provision is identical to 8 C.F.R.
§ 1208.16(e). See supra n.1.

21

Second, although the IJ found expressly that Shantu was not "firmly resettled" in Norway, both the IJ and the Board relied heavily on a determination that Shantu had engaged in impermissible "forum shopping" because he had found "safe haven" in Norway.  But as the Second Circuit has noted, "the regulation giving IJs discretion to deny asylum to applicants staying in a 'safe third country' before arrival in the United States" was repealed on January 5, 2001.  Tandia v. Gonzales, 437 F.3d 245, 248 (2d Cir. 2006) (per curiam).  Accordingly, the Second Circuit went on to hold, an IJ may only deny discretionary asylum based on a stay in a third country if the applicant was "firmly resettled" there.  Id. at 249 (citations omitted); see also Alsagladi v. Gonzales, 450 F.3d 700, 702 (7th Cir. 2006) ("[T]he United States does not require refugees to remain in the first nation they reach after their escape, unless they have become firmly settled there, or a treaty so provides." (citations omitted)).  Although the government takes the position that "safe haven" remains a factor that may properly be considered in a discretionary asylum determination, the Board may wish to consider on remand whether that is so — and whether, in any event, the so-called "forum shopping" in this case rose to the level of "egregious negative activity," see Zuh, 547 F.3d at 507.

22

Finally, we observe that the only other basis for the discretionary denial of Shantu's asylum application was the IJ's and the Board's conclusion that Shantu lied to consular officials to obtain his visa. We do not question the importance of discouraging fraudulent conduct by asylum seekers. But given that "[t]he BIA has explicitly cautioned that manner of entry cannot, as a matter of law, suffice as a basis for a discretionary denial of asylum in the absence of other adverse factors," Huang, 436 F.3d at 99 (citing In re Pula, 19 I. & N. Dec. at 473–74), we do question whether the way in which Shantu obtained his temporary visa constituted "egregious" misconduct.

**B.**

In addition, we note that this case may provide the BIA an opportunity to clarify its interpretation of 8 C.F.R. § 1208.16(e). While we find the meaning of the word "reconsider" to be evident, we have noted above that the regulation's text does not reveal when in the normal process of adjudicating an asylum application the reconsideration should occur, or what entity should do the reconsidering. We do not reach these questions because they do not affect the resolution of the case that is before us; Shantu's asylum application was not properly reconsidered at any stage of the process. Furthermore, we are cognizant that the BIA should interpret the regulation in the first instance. Cf. INS v. Orlando Ventura,

23

537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); Gonzales v. Thomas, 547 U.S. 183, 186 (2006); Nken, 585 F.3d at 822. We encourage the BIA to take that opportunity on remand.

## V.

Because Shantu's asylum application did not receive the reconsideration mandated by 8 C.F.R. § 1208.16(e), we find that the BIA's denial of his motion for reconsideration was an abuse of discretion. Accordingly, we grant Shantu's petition for review and remand the case to the BIA for further proceedings.

PETITION FOR REVIEW GRANTED;
VACATED AND REMANDED