**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-2286**

———————

ANA CECILIA HERNANDEZ GUARDADO,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Argued: March 19, 2025                                      Decided: August 5, 2025

———————

Before BENJAMIN and BERNER, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Vacated in part and remanded by published opinion. Senior Judge Floyd wrote the opinion in which Judge Benjamin and Judge Berner joined.

———————

**ARGUED:** Eric Hans Kirchman, KIRCHMAN & KIRCHMAN, Rockville, Maryland, for Petitioner. Aaron David Nelson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian Boynton, Principal Deputy Assistant Attorney General, Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent

———————

FLOYD, Senior Circuit Judge:

Ana Cecilia Hernandez Guardado, a native and citizen of El Salvador, entered the United States unlawfully in 2014. She applied for asylum, statutory withholding of removal, and protection under the Convention Against Torture (CAT). The Board of Immigration Appeals (BIA) denied her motion to reconsider its order rejecting all claims, and she now petitions for review. Because we find that the BIA committed legal error, we grant the petition, vacate the order in part, and remand for further proceedings.

I.

A.

In 2014, Guardado fled El Salvador because she was forced into an abusive relationship with a gang member named Juan. She dated Juan because he threatened to kill her family and her then-boyfriend, who she was forced to stop seeing. Juan regularly assaulted Guardado, and two of his fellow gang members followed her everywhere. They threatened to kill Guardado if she did not submit to Juan.

Guardado provided testimony about two of Juan's assaults. In November 2013, Juan hit Guardado in the face multiple times at a public pool because another man looked at her. In December 2013, when Guardado refused to have sex with Juan, he beat her, insulted her, cut her hand with a knife, and threatened to kill her if she went to the police.

Despite Juan's threat, Guardado reported the assault to the police that same night. She testified to being told: "Well, it is nighttime now. There is nothing we can help you with, and what you just told us is completely normal. You should not give it any attention."

2

J.A. 147.  Fearing for her safety, Guardado left town the next morning.  She moved from her mother's home in rural Cabanas to her sister's home in the city of San Salvador.  While in San Salvador, Guardado tried to remain inside and unseen.

About two months after Guardado left town, Juan's gang visited her mother.  They threatened to kill Guardado and her family if she did not return.  Shortly after the threats, Guardado fled to the United States.  She was detained upon entry in Texas but later relocated to Virginia, where she remains today.  While Guardado was detained, Juan's gang visited her mother a second time and again threatened to kill Guardado when she returned.

In December 2016, roughly two years after Guardado left El Salvador, her father was shot and killed in Cabanas.  Guardado suspects that Juan's gang killed her father because her family never received threats from anyone else.

B.

Because Guardado did not possess valid entry documents when she fled to the United States, the Department of Homeland Security charged her as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).  She later conceded her eligibility for removal through counsel.  To avoid removal, she applied for asylum, 8 U.S.C. § 1158, statutory withholding of removal, 8 U.S.C. § 1231(b)(3), and withholding of removal under CAT, 8 C.F.R. §§ 1208.16, 1208.18.

3

Guardado's petition focuses on her asylum claim.[1] She seeks asylum based on past persecution and fear of future persecution on account of her membership in two "particular social groups" (PSGs). She defines her PSGs as: (1) "El Salvadoran women who are continually sexually abused and tortured by gang members resulting in severe psychological abuse and death to an immediate family member and lack protection from government and police"; and (2) "rural El Salvadoran women targeted by gangs because of a lack of standing." Opening Br. 5.

In 2019, an immigration judge (IJ) denied Guardado asylum. The IJ found that her PSGs were not "legally cognizable"—more specifically, that her first PSG was improperly "defined by the harm suffered by its purported members," and both PSGs were neither "defined with particularity" nor "socially distinct." J.A. 85. The IJ also found that she failed to demonstrate a well-founded fear of future persecution because (among other reasons) "it has been over five years since Juan contacted the family looking for [her]." *Id.*

The BIA affirmed this decision in 2023. It rejected Guardado's PSGs on slightly different grounds, namely that both PSGs were defined by harm to their members (i.e., circularly defined), and the second PSG lacked particularity. The BIA agreed that Guardado failed to demonstrate a well-founded fear of future persecution.

Guardado moved for the BIA to reconsider. She argued that the BIA should have relied on *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014) to find her PSGs cognizable.

---

[1] Guardado's opening brief does not address CAT or statutory withholding of removal. She therefore abandons these claims. *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248–49 (4th Cir. 2013).

4

*Matter of A-R-C-G-* was vacated in 2018 but reinstated in 2021. The opinion holds that "married women in Guatemala who are unable to leave their relationship" is a cognizable PSG. *Id.* at 338–89. The BIA denied the motion. It reasserted its prior findings and held that *Matter of A-R-C-G-* did not impact its reasoning.

### C.

In this petition, Guardado seeks review of the BIA's denial of her reconsideration motion. She presents two main arguments: the BIA erred in finding that (1) her PSGs were not legally cognizable and (2) she did not establish a well-founded fear of future persecution. Notably, however, during oral argument, Guardado limited her petition to her first PSG. *See* Oral Arg. 11:08–12:09.

### II.

We review the BIA's denial of a motion to reconsider for abuse of discretion. *Mouns v. Garland*, 113 F.4th 399, 402 (4th Cir. 2024). This "means that we can reverse only if the [BIA] acted arbitrarily, irrationally, or contrary to law." *Id.* (quoting *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009)).

### A.

First, we examine whether the BIA erred in finding that Guardado's first PSG is not legally cognizable. This presents a question of law, which we review *de novo*. *See Garcia v. Garland*, 73 F.4th 219, 229 (4th Cir. 2023); *Morales v. Garland*, 51 F.4th 553, 557 (4th

5

Cir. 2022).  Ultimately, as in *Garcia*, we hold: "Because we are satisfied that the BIA's 'particular social group' ruling was erroneous, it necessarily acted 'contrary to law' and abused its discretion in denying reconsideration."  73 F.4th at 229 (quoting *Narine*, 559 F.3d at 249).  We explain why below.

We begin by outlining the legal framework governing asylum.  To bring a successful asylum claim, an applicant must establish three elements:

> (1) that the applicant has suffered past persecution or has a well-founded fear of future persecution; (2) that the persecution is "on account of" h[er] race, religion, nationality, membership in a particular social group, or political opinion; and (3) that the persecution is perpetrated by an organization that h[er] home country's government is unable or unwilling to control.

*Portillo Flores v. Garland*, 3 F.4th 615, 626 (4th Cir. 2021) (en banc) (quoting *Arita-Deras v. Wilkinson*, 990 F.3d 350, 357 (4th Cir. 2021)).  Further, an applicant who, like Guardado, claims asylum based on membership in a PSG "must establish 'that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'"  *Nolasco v. Garland*, 7 F.4th 180, 187 (4th Cir. 2021) (quoting *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014)); *see Quintero v. Garland*, 998 F.3d 612, 632 (4th Cir. 2021) (same).[2]

---

[2] At times, this opinion relies on federal case law that cites BIA precedent.  In doing so, we recognize that "although [*Loper Bright*] declared 'legal interpretation' 'the province and duty of the judicial department,'" "*Loper Bright* doesn't wipe away the results of our prior decisions deferring to the [BIA's] reasonable interpretations of [the law]."  *Chavez v. Bondi*, 134 F.4th 207, 213 (4th Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024)).

Here, the BIA found that Guardado's first PSG was "impermissibly defined in a circular fashion by the harm to [its] constituent member[s]." J.A. 4. While we agree that a PSG cannot be defined exclusively by the harm its members face (i.e., the anti-circularity requirement), we join a growing consensus of our sister circuits in recognizing that the BIA cannot simply "claim[] circularity in a perfunctory manner." *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 498 (6th Cir. 2024); *see Cece v. Holder*, 733 F.3d 662, 671–72 (7th Cir. 2013) (en banc); *Grace v. Barr*, 965 F.3d 883, 903–04 (D.C. Cir. 2020); *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1088 (9th Cir. 2020); *Avila v. Att'y Gen.*, 82 F.4th 250, 262–63 (3d Cir. 2023); *Espinoza-Ochoa v. Garland*, 89 F.4th 222, 231–32 (1st Cir. 2023).

In other words, the BIA cannot make a "conclusory judgment that a PSG is circular per se." *Espinoza-Ochoa*, 89 F.4th at 232. In place of such a "superficial 'quick look' at the words used,'" the BIA must perform a "substantive analysis": it must "'determin[e] what underlying characteristics account for the fear and vulnerability' of the group, and whether the society views those characteristics as distinct." *Id.* at 227, 233 (quoting *Grace*, 965 F.3d at 904); *see Cece*, 733 F.3d at 672 (same); *Tista-Ruiz*, 114 F.4th at 496 (same).[3]

---

[3] In *Del Carmen Amaya-De Sicaran v. Barr*, this Court affirmed a seemingly swift rejection of a circular PSG. 979 F.3d 210, 218 (4th Cir. 2020). But *Del Carmen*, which examines a different PSG, is not determinative here. For one, *Del Carmen* heavily relied on a BIA precedent that has since been vacated in its entirety for "threaten[ing] to create confusion and discourage careful *case-by-case* adjudication of asylum claims." *Matter of A-B-*, 28 I&N Dec. 307, 308–09 (A.G. 2021) (emphasis added) (vacating *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) (hereinafter "*A-B- I*")); *see Del Carmen*, 979 F.3d at 216–18 (relying on *Matter of A-B- I*). For another, the Court today does not diverge from *Del Carmen* and suddenly reject the anti-circularity requirement. Rather, we aim to clarify how the requirement should be understood and applied.

7

This substantive analysis is necessary for a host of reasons. First, although the cognizability of a proposed PSG presents a question of law, this question is analyzed through a "fact-based inquiry made on a case-by-case basis." *Espinoza-Ochoa*, 89 F.4th at 232 (quoting *Varela-Chavarria v. Garland*, 86 F.4th 443, 452 (1st Cir. 2023)); *see Tista-Ruiz*, 114 F.4th at 502 (same); *Diaz-Reynoso*, 968 F.3d at 1080 (similar); *Grace*, 965 F.3d at 905–06 (similar); *cf. Diaz-Reynoso*, 968 F.3d at 1084 ("courts cannot rewrite proposed social groups," but they also should not "analyze them … mechanistically"). Second (and relatedly), "whether a group exists independently of the harm alleged is not always so apparent" and "depends on the facts of the particular case." *Grace*, 965 F.3d at 903–04 (examining several PSGs that are only circular at first blush).

Third, "we see no logic or reason behind the assertion that abuse cannot do double duty, both helping to define the group, and providing the basis for a finding of persecution." *De Pena-Paniagua v. Barr*, 957 F.3d 88, 94 (1st Cir. 2020); *see Diaz-Reynoso*, 968 F.3d at 1082–83 ("persecution itself 'may be the catalyst that causes' a society to distinguish a group in a meaningful way and consider it distinct" (quoting *Matter of M-E-V-G-*, 26 I&N Dec. at 243)); *Espinoza-Ochoa*, 89 F.4th at 232 (same).[4] And finally, even if a PSG is largely defined by persecution, "a group that exists independent of persecution is simply a

---

[4] The Ninth Circuit suggests that one way to assess for circularity is to "consider whether a petitioner's social group is cognizable if it is defined without reference to the fact of persecution." *Diaz-Reynoso*, 968 F.3d at 1080–81. We do not endorse this approach because we think it is at odds with the fact that "persecution itself may be the catalyst that causes a society to distinguish a group." *Id.* at 1082–83 (internal quotation marks omitted).

group that shares an immutable characteristic *other than* the persecution it suffers." *Diaz-Reynoso*, 968 F.3d at 1083 (emphasis in original).[5]

At bottom, "if the [BIA] wishes to deny an asylum claim on the basis of circularity, then it must review the record and conduct the proper analysis." *Tista-Ruiz*, 114 F.4th at 499. In this case, the BIA simply "claim[ed] circularity in a perfunctory manner." *Id.* at 498. In fact, its PSG rejections (both at reconsideration and during the initial appeal) do not reference a single fact relating to Guardado or the conditions in El Salvador. *See* J.A. 4 (reconsideration); J.A. 22 (appeal). This limited analysis suggests that the BIA merely "looked at the words used to describe the PSG and then ended [its] review." *Espinoza-Ochoa*, 89 F.4th at 233. Such a "boilerplate invocation of circularity" does not constitute a fact-based, case-specific inquiry. *Tista-Ruiz*, 114 F.4th at 503.

Ultimately, by failing to perform the necessary substantive analysis, the BIA committed legal error. We therefore vacate its PSG ruling and remand for a new assessment tailored to the facts and evidence of Guardado's case, "not just the language used to articulate the PSG." *Espinoza-Ochoa*, 89 F.4th at 232; *see also Portillo Flores*, 3 F.4th at 626 ("As a general matter, when the B[IA] errs, 'the proper course … is to remand to the agency for additional investigation or explanation.'") (quoting *Alvarez Lagos v. Barr*,

---

[5] Here, Guardado's gender is potentially one such characteristic. *See Martinez v. Holder*, 740 F.3d 902, 910 (4th Cir. 2014) (immutability is a characteristic that one "either cannot change, or should not be required to change because it is fundamental to their individual identit[y] or conscience[]" (quoting *Zelaya v. Holder*, 668 F.3d 159, 165 (4th Cir. 2012)); *Garcia*, 73 F.4th at 230 (gender is an immutable characteristic).

9

927 F.3d 236, 249 (4th Cir. 2019)); *Hussain v. Gonzales*, 477 F.3d 153, 157–58 (4th Cir. 2007) (finding a "rare circumstance" in which a BIA remand is inappropriate "[b]ecause the result ... is a foregone conclusion," i.e., it does not rely on any factual analysis).

In doing so, we recognize that the BIA may continue to find that "El Salvadoran women who are continually sexually abused and tortured by gang members …" is circular. But Guardado is entitled to a substantive review determining this. *See Diaz-Reynoso*, 968 F.3d at 1086 ("Nothing in our analysis negates the precedent establishing that a group may be deemed impermissibly 'circular' if, after conducting the proper case-by-case analysis, the BIA determines that the group is 'defined exclusively by the fact that its members have been subjected to harm.' (quoting *Matter of M-E-V-G-*, 26 I&N Dec. at 242)).

### B.

Next, we turn to whether the BIA erred in finding that Guardado failed to establish a well-founded fear of future persecution. We hold that the outcome of this second issue depends on the outcome of the first. If, on remand, the BIA again finds that Guardado does not present a cognizable PSG, the issue of persecution becomes moot. If, however, the BIA finds that Guardado successfully presents a cognizable PSG, the BIA should re-examine both past and future persecution. We explain why below.

To begin, we emphasize that, without a protected ground, Guardado's asylum claim cannot succeed. "[T]he INA mandates that those who seek refugee status demonstrate that they fear persecution 'on account of' a protected ground." *Crespin-Valladares v. Holder*, 632 F.3d 117, 127 (4th Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)). As a result, "even

10

treatment that is regarded as 'morally reprehensible' does not constitute 'persecution' qualifying for protection under the INA unless it occurs on account of one of the protected grounds spelled out therein." *Abdel-Rahman v. Gonzales*, 493 F.3d 444, 453 (4th Cir. 2007) (quoting *Matter of T-M-B-*, 21 I&N Dec. 775, 777 (BIA 1997)).

Guardado's only protected ground is a PSG. Therefore, if, on remand, the BIA continues to find that this PSG is not cognizable, her asylum claim fails, and any discussion of persecution becomes unnecessary. However, if the BIA finds that Guardado's PSG *is* cognizable, it must fully examine persecution and account for the following presumption: "an applicant who has been found to have established … past persecution shall also be presumed to have a well-founded fear of persecution[.]" 8 C.F.R. § 1208.13(b)(1).

Up to this point, the BIA has never examined past persecution. Instead, the BIA has only completed unnecessary work: determining whether Guardado's fear of future persecution is "objectively reasonable" despite being unconnected to a protected ground. J.A. 4. We therefore vacate this persecution analysis and remand for further proceedings on this issue if necessary, i.e., if Guardado presents a cognizable PSG.[6]

*VACATED IN PART AND REMANDED*

---

[6] In doing so, we reject the government's argument that Guardado forfeited the issue of future persecution. While her reconsideration motion focuses on the BIA's PSG analysis, it makes clear that this analysis inevitably impacts persecution. *See* J.A. 10–12 (explaining that persecution must occur on account of a "protected ground" and that past persecution creates a presumption of future persecution); J.A. 13 (arguing that "a thorough analysis of [the latest PSG guidance] should have taken place as [Guardado] is obviously a woman unable to return to her relationship in her home country").

11