**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1282**

MARCELO SANCHEZ,

        Petitioner,

    v.

JEFFERSON B. SESSIONS III, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 21, 2017                              Decided: July 10, 2017

Before NIEMEYER and KEENAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Petition denied by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Keenan joined. Judge Davis wrote a separate opinion concurring in the judgment.

**ARGUED**: Paul Mercer Cauley, THE CAULEY LAW FIRM, PLLC, Charlotte, North Carolina, for Petitioner. Sharon Michele Clay, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Justin R. Markle, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

After an Immigration Judge denied Marcelo Sanchez's application for adjustment of status and ordered him removed to Brazil, Sanchez did not appeal the ruling to the Board of Immigration Appeals ("BIA"). He did, however, file a motion with the Immigration Judge to reopen his removal proceeding to consider two pieces of evidence that he obtained after his hearing. The Immigration Judge denied his motion to reopen, concluding that the evidence was not material, and the BIA affirmed, dismissing his appeal. Because we conclude that the BIA did not abuse its discretion, we deny his petition for review.

I

Sanchez, a native and citizen of Brazil, was admitted to the United States in February 1996 on a non-immigrant visitor's visa, which he overstayed. He returned to Brazil in December 1998 but was readmitted to the United States in January 1999 on another visitor's visa, which he again overstayed. Ten years later, in January 2009, the Department of Homeland Security served him with a notice charging that he was subject to removal.

Sanchez applied for cancellation of removal, and while that application was pending, he married a U.S. citizen, who filed an alien relative petition on his behalf. After his spouse's petition was approved, Sanchez filed an application to adjust his status to that of a lawful permanent resident, pursuant to 8 U.S.C. § 1255(a). Following a hearing on December 19, 2014, the Immigration Judge found Sanchez statutorily

2

ineligible for adjustment based on the government's evidence that Sanchez had, in registering to vote in Mecklenburg County, North Carolina, on May 7, 2007, made a false statement under oath that he was a U.S. citizen. The half-page registration card stated that Sanchez's address was 4119 Bathurst Drive, Charlotte, North Carolina and that his State of birth was New Jersey (where he had lived for many years before moving to North Carolina). In response to a question of whether he was a citizen of the United States, a box was checked, "yes." At the bottom of the card, Sanchez's signature appeared under a declaration, made "under penalty of perjury," that stated, among other things, "I am a United States citizen." And printed on the card, in bold typeface, was a "warning" that "[i]f you sign this card and know the information provided to be false, you can be convicted of a Class I Felony." The government also presented records indicating that the Mecklenburg County Board of Elections mailed communications to Sanchez at the Bathurst Drive address in 2011 and 2012, and that Sanchez never voted in North Carolina after registering in 2007.

When confronted with the government's evidence, Sanchez denied that he had ever claimed to be a United States citizen. He conceded that the signature on the voter registration card appeared to be his own but testified that he did not recall signing it, adding that he "believe[d] the voter registration card with his signature may have been in some paperwork at the Department of Motor Vehicles (DMV) that he signed when

3

obtaining his driver's license" and that "he was unaware he was registered to vote."[*] He also denied "receiv[ing] mail at his home from the Mecklenburg County Board of Elections," although he confirmed the accuracy of his home address on the voter registration card.

In denying Sanchez's application for adjustment of status and ordering his removal, the Immigration Judge noted that Sanchez bore the burden of establishing that he was "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title," 8 U.S.C. § 1229a(c)(2)(A), which meant that he was required to show that he had never "falsely represented[] himself . . . to be a citizen of the United States for any purpose or benefit under . . . Federal or State law," *id.* § 1182(a)(6)(C)(ii)(I). Although the Immigration Judge found "it implausible [that Sanchez] could not recall signing the voter registration form [and] yet could recall" other details from his 2007 visit to the DMV, he found that Sanchez had "testified credibly" when the record was considered as a whole. Nonetheless, the Immigration Judge found that Sanchez had "made a false claim to United States citizenship" when he signed the North Carolina voter registration card and thereby certified, under the penalty of perjury, that he was a U.S. citizen. Accordingly, the Judge concluded that Sanchez was ineligible for adjustment of his status under § 1255(a). Because Sanchez was concededly subject to removal for overstaying his visa and had filed no other application for relief, the

---

[*] The transcript of Sanchez's testimony at the December 19, 2014, hearing was not included in the certified administrative record. The parties rely instead and without objection on the Immigration Judge's summary of Sanchez's testimony.

4

Immigration Judge ordered him removed to Brazil. Sanchez did not appeal the Immigration Judge's ruling.

On April 20, 2015, Sanchez filed a motion to reopen his removal proceedings, relying on two pieces of evidence that he obtained after the December 2014 removal hearing. First, he submitted a copy of a card dated January 2, 2015, that the Mecklenburg County Board of Elections mailed to him at his Bathurst Drive address as part of its "biennial list maintenance," which stated that it was being sent because Sanchez had "not respond[ed] to a recent voter registration mailing or a voter registration mailing that was mailed to [him] was returned undeliverable." Sanchez argued that this correspondence supported his testimony "that he did not have knowledge that he had been registered to vote" and therefore "call[ed] into question whether [he] knowingly and willfully claimed to be a U.S. citizen by signing the voter registration form." Second, he submitted a certified record from the Mecklenburg County Board of Elections showing that, at his request, he had been removed from the voter registration list on January 5, 2015. He argued that this record showed that he "took action to remove his name from the voter registration list as soon as possible after learning of the voter registration error" and that his action should be viewed as a "timely recant" of any false claim of U.S. citizenship.

The Immigration Judge denied Sanchez's motion to reopen, concluding that the evidence Sanchez presented was not material. Specifically, the Immigration Judge concluded that even assuming "these submissions were previously undiscoverable or unavailable," they do "not alter this Court's prior finding that [Sanchez] made a false claim to United States citizenship on his North Carolina voter registration card."

5

Sanchez appealed the Immigration Judge's denial of his motion to reopen, and the BIA dismissed his appeal with a decision dated February 18, 2016. The BIA noted that in light of the Immigration Judge's original holding that Sanchez "did not persuasively establish that he was unaware he signed the voter registration card," the recent mailing from the Board of Elections was not material, explaining that "[t]he fact that [Sanchez] failed to respond to a voter registration mailing or that such a mailing was returned as undeliverable more than 7 years after he registered to vote does not . . . persuasively establish[] that [Sanchez] was unaware he signed the voter registration card at the time he applied for his driver's license." The BIA also concluded that "because [Sanchez's] new evidence is insufficient to alter the Immigration Judge's finding that [Sanchez] made a false claim in signing the card in 2007, his evidence that he had himself removed from the voter registration rolls 7 years later, after being confronted with the claim in removal proceedings, does not constitute a timely retraction of his claim of United States citizenship."

From the BIA's decision affirming of the Immigration Judge's denial of his motion to reopen, Sanchez filed this petition for review.


II

Sanchez contends that the BIA "erred as a matter of law" in affirming the Immigration Judge's denial of his motion to reopen, contending that the new evidence was material because it corroborated his testimony that "he had a lack of knowledge relating to the signing [of] a voter registration card" and that, in any event, he timely

6

recanted any false claim of U.S. citizenship by having his name removed from the voter registration list "immediately" after learning of his "inadvertent" registration. Accordingly, he argues, the BIA abused its discretion in refusing to order his removal proceedings reopened.

The Immigration and Nationality Act provides that an alien in removal proceedings "may file one motion to reopen [the] proceedings," which must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A)-(B). Where the motion to reopen is presented to the Immigration Judge, the motion "will not be granted unless the Immigration Judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.23(b)(3). To be material, the new evidence must be "likely [to] change the result in the case." *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992). "The decision to grant or deny a motion to reopen . . . is within the discretion of the Immigration Judge." 8 C.F.R. § 1003.23(b)(1)(iv).

We review a BIA decision upholding an Immigration Judge's denial of a motion to reopen for abuse of discretion. "In applying this standard, the BIA should be reversed 'only if the decision is arbitrary, capricious, or contrary to law.'" *Sadhvani v. Holder*, 596 F.3d 180, 182 (4th Cir. 2009) (quoting *Massis v. Mukasey*, 549 F.3d 631, 636 (4th Cir. 2008)). We afford such "extreme deference" out of recognition that "motions to reopen are disfavored because every delay works to the advantage of the deportable alien

7

who wishes merely to remain in the United States." *Id.* (quoting *Massis*, 549 F.3d at 636).

In this case, we conclude that the BIA did not abuse its discretion in affirming the Immigration Judge's denial of Sanchez's motion to reopen. The first piece of new evidence that Sanchez presented in support of his motion was a January 2015 mailing from the Mecklenburg County Board of Elections indicating that it was sent "because [Sanchez] did not respond to a recent voter registration mailing or a voter registration mailing that was mailed to [him] was returned undeliverable." Sanchez argues that this evidence shows that he had not received any prior correspondence from the Board of Elections, thus bolstering his claim that he did not know that he had registered to vote in 2007. The correspondence, however, does no such thing. All it shows is that Sanchez did not respond to a recent mailing. Indeed, if anything, the fact that Sanchez received the Board of Elections mailing casts doubt on his testimony that he had not received prior mailings from the Board, since all of the correspondence from the Board, including the January 2015 mailing, was sent to the same Bathurst Drive address that was listed on Sanchez's voter registration card.

The second piece of new evidence that Sanchez presented was evidence that he voluntarily had himself removed from the voter registration list on January 5, 2015. He contends that this evidence shows that he timely recanted any false claim of citizenship, arguing that because he first learned at the December 19, 2014 hearing that he had inadvertently registered to vote in 2007, his act of removing himself from the voter registration list in January 2015 was a timely retraction and therefore provided

8

justification for his motion to reopen because the recantation made him eligible for admission and adjustment of status.

The BIA recognizes generally that for a retraction to be effective, it "must be voluntary and without delay." *Matter of Namio*, 14 I. & N. Dec. 412, 414 (BIA 1973). But it is doubtful that a retraction can qualify as "voluntary" when it occurs *after* the alien has already been confronted with evidence of the false claim, as occurred here. *See id.* (concluding that a "recantation was neither voluntary nor timely" where "the respondent did not retract his statement until approximately one year later, *and the retraction was not made until it appeared that the disclosure of the falsity of the statements was imminent*" (emphasis added)); *Matter of M-*, 9 I. & N. Dec. 118, 119 (BIA 1960) ("We have held that where an alien in an immigration proceeding testifies falsely under oath as to a material fact *but voluntarily and without prior exposure of his false testimony* comes forward and corrects his testimony, perjury has not been committed and the charge based thereon is not sustained" (emphasis added)); *see also Llanos-Senarillos v. United States*, 177 F.2d 164, 165 (9th Cir. 1949) ("If the witness withdraws the false testimony of his own volition and without delay, the false statement and its withdrawal may be found to constitute one inseparable incident out of which an intention to deceive cannot rightly be drawn"), *quoted in Matter of Namio*, 14 I. & N. Dec. at 414 n. 3.

Moreover, given that the purported recantation was made seven years after the false claim, it cannot be considered timely. Sanchez claims that he first became aware of the false claim in December 2014. But, as the BIA noted, the Immigration Judge found as fact in the underlying removal proceeding that even though Sanchez's testimony was

9

generally credible, Sanchez nonetheless "*did not persuasively establish that he was unaware he signed the voter registration card*." In light of this finding, it follows that the BIA did not err in concluding that Sanchez's "evidence that he had himself removed from the voter registration rolls 7 years later, after being confronted with the claim in removal proceedings, does not constitute a timely retraction of his [false] claim of United States citizenship."

At bottom, because the BIA reasonably concluded that Sanchez's new evidence was not material to the Immigration Judge's finding in the underlying proceeding that he had falsely represented himself as a U.S. citizen for a purpose or benefit under Federal or State law, 8 U.S.C. § 1182(a)(6)(C)(ii)(I), it did not abuse its discretion when it affirmed the Immigration Judge's denial of Sanchez's motion to reopen. Sanchez's petition for review is

DENIED.

DAVIS, Senior Circuit Judge, concurring in the judgment:

For me, this is an unusually difficult case, given the stakes involved and the questions it presents. The IJ found Mr. Sanchez credible, but without explaining why, *not on the issues that really matter.* The judge disbelieved Mr. Sanchez's testimony that he did not realize until the moment in the hearing when he was confronted with the relevant documentation that he had falsely claimed, while obtaining a North Carolina driver's license, to be a United States citizen. Without at all casting aspersions on hard-working government employees, anyone who has spent time in a state department of motor vehicles will know that stranger things can happen in such a place than an undocumented immigrant's innocent execution of a voter registration card.[*] Resting on the IJ's curious credibility assessment, the Board then found that the "recantation" was not timely. But if Mr. Sanchez did not learn of the nature of what he had signed until December 2014, then it is difficult to see why a "recantation" presented in April 2015 could possibly be untimely. I think the title of this story has been taken: "*Catch-22*."

---

[*] Adding to the mystery of why Mr. Sanchez would knowingly and falsely attest to his United States citizenship (by virtue of signing the registration card) is that in response to a question on the very same card of whether he would be 18 years of age on or before election day, a box was checked, "no." This fact begs the question whether Mr. Sanchez was aware of his false claim of citizenship at the time of signing, for why would he knowingly make a false representation of U.S. citizenship for the benefit of voting if he answers a related question in a way that renders him ineligible to vote? This fact also highlights the potentially tragic consequences of clerical mistakes at the DMV — it is incredibly disheartening that even a hard-working clerk would file a voter registration card with such internal inconsistencies and that this card, on its own, would justify the deportation of a man, the enduring loss of a father, husband, and productive member of the community, with no history of voting.