**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-1368**

─────────────

HUSSEIN AHMED MOUNS,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Argued: October 25, 2023                    Decided: August 28, 2024

─────────────

Before KING and GREGORY, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

─────────────

Petition granted by published opinion. Judge King wrote the opinion, in which Judge Gregory and Judge Goodwin joined.

─────────────

**ARGUED:** Daniel Aaron Diskin, GARFIELD LAW GROUP, PC, Washington, D.C., for Petitioner. Jessica Eden Burns, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** David Garfield, GARFIELD LAW GROUP, PC, Washington, D.C., for Petitioner. Brian Boynton, Principal Deputy Assistant Attorney General, Leslie McKay, Senior Litigation Counsel, John F. Stanton, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

KING, Circuit Judge:

The petitioner in this immigration matter, Hussein Ahmed Mouns, seeks our review of the decision of the Board of Immigration Appeals (the "BIA") denying reconsideration of its earlier denial of Mouns's motion to reopen his proceedings. In requesting the BIA's reconsideration, Mouns argued that the BIA had committed legal error in denying the motion to reopen by utilizing the reopening standard devised for cases presenting special, adverse considerations by *In re Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992) (requiring the movant to show that "the new evidence offered would likely change the result in the case"), rather than the generally applicable and less burdensome standard endorsed by *In re L-O-G-*, 21 I. & N. Dec. 413, 418-20 (BIA 1996) (allowing a showing of "reasonable likelihood"). Without addressing or even acknowledging *L-O-G-* or the "reasonable likelihood" standard, the BIA summarily declared the *Coelho* standard to be applicable and denied reconsideration. Because the BIA flouted its own precedents by ratifying the use of the *Coelho* standard, we grant Mouns's petition for review, vacate the BIA's decision denying reconsideration, and remand for further proceedings.

I.

Mouns is a native of Ethiopia and citizen of Yemen who has been in the United States since 1996. He filed an application in 1997 for asylum and withholding of removal, which was denied by an immigration judge (an "IJ") in 1999, with affirmance from the BIA in 2002. Thereafter, Mouns filed with the BIA a pair of motions in 2003 and 2004 to reopen his proceedings, by which he sought to pursue asylum, withholding of removal, and

2

the previously unavailable relief of protection under the Convention Against Torture (the "CAT"). Those motions were denied by the BIA in, respectively, 2003 and 2005. Mouns did not petition this Court or another court of appeals for review of any of the BIA's adverse decisions. Although Mouns was thereby expected to return to Yemen, he remained in the United States.[1]

In 2020, Mouns filed with the BIA a third motion to reopen his proceedings — the motion whose denial by the BIA triggered the reconsideration request now at issue. By that motion to reopen, Mouns asserted changed country conditions in Yemen — including its intervening and ongoing civil war — and again sought to pursue claims for asylum, withholding of removal, and protection under the CAT. Mouns specified that he would be subject to persecution upon his removal to Yemen based on, inter alia, his religion (Sunni Muslim) and imputed political opinion (resulting from his association with the United States and prior employment in Yemen with the U.S. Agency for International Development). Applying the reopening standard of *Coelho*, the BIA denied Mouns's motion to reopen by decision of May 2021 (the "Reopening Denial"). Mouns did not petition this Court for review of the Reopening Denial.

Mouns did, however, request the BIA's reconsideration of the Reopening Denial, arguing that the BIA had committed legal error by using the *Coelho* standard, rather than the "reasonable likelihood" standard endorsed by *L-O-G-*. Additionally, Mouns contended

---

[1] The fact that Mouns failed to return to Yemen in the early or mid-2000s was not raised by the BIA as a ground for denying him relief in the decision now before us.

that the BIA had improperly diminished and disregarded evidence presented in support of his motion to reopen. The BIA rejected those arguments and therefore denied reconsideration by decision of March 2022 (the "Reconsideration Denial"). Significantly, as recounted above, the Reconsideration Denial summarily declared the *Coelho* standard to be applicable, with nary a mention of *L-O-G-* or the "reasonable likelihood" standard. Mouns then petitioned for our review of the Reconsideration Denial, and we possess jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

II.

At the outset, we highlight the distinction between reopening and reconsideration in immigration proceedings. As we have explained, "a request for reconsideration is based upon 'errors of fact or law in the prior [BIA] decision,'" *see Obioha v. Gonzales*, 431 F.3d 400, 408 (4th Cir. 2005) (quoting 8 C.F.R. § 1003.2(b)(1)), "whereas a request to reopen proceedings results from changed circumstances and specifically contemplates that [a movant] will do so 'for the purpose of submitting an application for relief,'" *id.* (quoting 8 C.F.R. § 1003.2(c)(1)). Here, Mouns first moved the BIA to reopen his proceedings so that he could pursue claims for asylum, withholding of removal, and protection under the CAT based on changed country conditions in Yemen — the motion denied by the Reopening Denial. Mouns then requested reconsideration of the Reopening Denial to accord the BIA an opportunity to correct alleged errors therein — the request denied by the Reconsideration Denial.

4

Because Mouns did not petition for our review of the Reopening Denial, our review is limited to the Reconsideration Denial. Nevertheless, much of today's opinion necessarily focuses on reopening, as the question before us is whether the BIA committed reversible error in the Reconsideration Denial by denying Mouns's request for reconsideration of the Reopening Denial.

We have long reviewed the BIA's denial of reconsideration for an abuse of discretion. *See Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009). That "means that we can reverse only if the [BIA] acted arbitrarily, irrationally, or contrary to law." *Id.* (internal quotation marks omitted). Mouns asserts that the BIA acted arbitrarily, irrationally, and contrary to law in the Reconsideration Denial by, inter alia, ratifying its earlier use in the Reopening Denial of the *Coelho* standard instead of the "reasonable likelihood" standard. As explained herein, we agree.[2]

A.

1.

A motion to reopen, in the words of the Supreme Court, "is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *See*

---

[2] Because the BIA's use of the wrong reopening standard requires us to vacate the Reconsideration Denial and remand for further proceedings, we need not reach and address other alleged errors in the Reconsideration Denial, which relate to the BIA's treatment of Mouns's evidence in support of his motion to reopen. We note, however, that Mouns has presented colorable arguments that the BIA improperly diminished and disregarded his evidence. Moreover, although the government disputes Mouns's entitlement to the relief sought, it acknowledges that his "desire to avoid return to Yemen is understandable." *See* Br. of Resp't 53 (encouraging Mouns to "explore applying for Temporary Protected Status," as has recently been extended to other Yemeni nationals).

5

*Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)).  Since 1958, when the BIA was established, motions to reopen immigration proceedings have been governed by federal regulations promulgated by the United States Attorney General.  *See* 23 Fed. Reg. 9115, 9118-19 (Nov. 26, 1958).  Those regulations, as periodically amended, now coexist with predominating statutory standards for motions to reopen that were enacted by Congress in 1996, *see* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, and that also have since been amended several times.

The controlling statute, found in § 1229a(c)(7) of Title 8, includes a general limit of "one motion" that must "be filed within 90 days of the date of entry of a final administrative order of removal."  *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i).  Such a motion may be filed to pursue various types of relief, both discretionary and mandatory.

Pertinent here, however, the controlling statute and the regulations provide that a motion to reopen is not subject to the usual time and number limits

> if the basis of the motion is to apply for relief [in the form of asylum or withholding of removal] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

*See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii) (illuminating that "[t]he time and numerical limits" do "not apply to a motion to reopen proceedings" where the movant seeks "[t]o apply or reapply for asylum or withholding of [removal] based on changed [country conditions]").  By their express terms, the statute and regulations thus bestow special, favorable treatment on a motion to reopen where the movant is seeking to

6

pursue asylum or withholding of removal based on changed country conditions — even where the movant has previously applied for and been denied asylum or withholding of removal.

As is well established, asylum is relief that the Attorney General may grant in his discretion, *see* 8 U.S.C. § 1158, and withholding of removal is relief that the Attorney General must grant, *see id.* § 1231(b)(3), upon certain showings by a noncitizen that he would be subject to death or other persecution in the country to which he would be removed.  Specifically, a noncitizen seeking asylum must show that he is a "refugee," whose statutory definition includes a person "who is unable or unwilling to return to [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(A).  Similarly, a noncitizen seeking withholding of removal must show that his "life or freedom would be threatened in [the] country [of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A).  *But see Anim v. Mukasey*, 535 F.3d 243, 252-53 (4th Cir. 2008) (explaining that a withholding of removal claim requires proof of "a clear probability" of persecution — "a more demanding standard of proof than an asylum claim" — such that a noncitizen "who has failed to establish the less stringent 'well-founded fear' standard of proof required for asylum relief is necessarily also unable to establish an entitlement to withholding of removal" (internal quotation marks omitted)).

By authorizing grants of asylum and withholding of removal, Congress has given our government "flexibility to respond to" a threat of persecution faced by a noncitizen.

7

*See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (internal quotation marks omitted) (underscoring that "[d]eportation is always a harsh measure" and that "it is all the more replete with danger when [a noncitizen] makes a claim that he or she will be subject to death or persecution if forced to return to his or her home country"). That flexibility was further expanded by Congress with its enactment of 8 U.S.C. § 1229a(c)(7)(C)(ii), freely allowing immigration proceedings to be reopened so that a noncitizen may pursue asylum and withholding of removal when a threat of persecution comes with changed country conditions, and not just changed personal circumstances.

2.

According to the regulations concerning motions to reopen in general, where jurisdiction in a particular matter has vested with the BIA, a party's motion to reopen must be made to the BIA and "[t]he decision to grant or deny [the] motion . . . is within the [BIA's] discretion." *See* 8 C.F.R. § 1003.2(a) (addressing reopening requests made to the BIA); *see also id.* § 1003.23(b)(1) (explaining when reopening can instead be sought from an IJ). Notably, the BIA acts as adjudicator in immigration proceedings on authority delegated by the Attorney General, pursuant to both statute and regulation. *See Kucana*, 558 U.S. at 239 (citing 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1). In contrast, the BIA's "discretionary authority to act on a motion to reopen . . . is specified not in a statute, but only in the Attorney General's regulation." *See id.* at 243-44 (internal quotation marks omitted) (referring to 8 C.F.R. § 1003.2(a)); *see also INS v. Doherty*, 502 U.S. 314, 323 (1992) (describing the "broad discretion" accorded by regulation to the BIA to grant or deny a motion to reopen (quoting *INS v. Rios-Pineda*, 471 U.S. 444, 449 (1985))).

8

For their part, the regulations indicate that a movant must "ma[k]e out a prima facie case for relief" to qualify for reopening, and that the BIA can then exercise its discretion to grant or deny the motion. *See* 8 C.F.R. § 1003.2(a) (providing that the BIA "has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief"). As such, the questions raised by a motion to reopen may include the following, which can be addressed by the BIA in either order: (1) whether the movant has demonstrated statutory eligibility for the relief sought; and (2) where the relief sought is discretionary rather than mandatory, whether the movant has demonstrated entitlement to a discretionary grant of that relief. *See INS v. Abudu*, 485 U.S. 94, 104-05 (1988) (observing that, to deny reopening, the BIA "may hold that the movant has not established a prima facie case [of statutory eligibility] for the underlying substantive relief sought," or, "in cases in which the ultimate grant of relief is discretionary," it "may leap ahead . . . and simply determine that . . . the movant would not be entitled to the discretionary grant of relief").

Meanwhile, the controlling statute mandates that a "motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." *See* 8 U.S.C. § 1229a(c)(7)(B). Thus, whether the movant has complied with those statutory requirements is another question raised by a motion to reopen and another ground on which reopening may be denied.

9

3.

Importantly, neither the controlling statute nor the regulations specify what the proffered evidence must show in order for the movant to qualify for reopening by making out a prima facie case for the relief sought. Instead, the BIA has used its decisions to delineate reopening standards.

a.

Of especial significance in our Circuit, the BIA employed the "reasonable likelihood" reopening standard in its 1979 decision in *In re Rodriguez-Vera*, 17 I. & N. Dec. 105 (BIA 1979). There, noncitizen Rodriguez-Vera had previously been found removable based on his Texas conviction for the murder of his wife, and he was seeking to reopen his immigration proceedings to apply for the first time for a discretionary waiver of inadmissibility under 8 U.S.C. § 1182(c). *See Rodriguez-Vera*, 17 I. & N. Dec. at 105-06.[3] The government argued that regardless of whether Rodriguez-Vera was statutorily eligible for a waiver of inadmissibility, such a waiver "would surely be denied in the exercise of discretion and, therefore, no useful purpose would be served by granting the motion [to reopen]." *Id.* at 106. Applying the "reasonable likelihood" standard, the BIA then denied reopening on the ground that "the evidence of record fail[ed] to demonstrate a reasonable likelihood that the relief sought would be granted at a reopened hearing." *Id.* at 107

---

[3] Prior to its repeal in 1996, § 1182(c) of Title 8 allowed a noncitizen "'lawfully admitted for permanent residence' yet facing deportation to apply for discretionary relief" — a waiver of inadmissibility — upon completion of 'a lawful unrelinquished domicile of seven consecutive years.'" *See Nwolise v. INS*, 4 F.3d 306, 308 (4th Cir. 1993) (footnote omitted) (quoting former 8 U.S.C. § 1182(c)).

10

(explaining that Rodriguez-Vera's murder offense was "an extremely serious negative factor" that there was no reasonable likelihood of overcoming "by a showing of unusual or outstanding equities").

This Court then recognized *Rodriguez-Vera*'s "reasonable likelihood" standard in our 1990 decision in *M.A. v. INS*, 899 F.2d 304 (4th Cir. 1990) (en banc). And we did so without questioning it, as the issue before us in *M.A.* was not the propriety of the "reasonable likelihood" standard. Rather, we were deciding our own standard for reviewing the BIA's denial of a motion to reopen based on the movant's failure to make a prima facie showing of statutory eligibility for the relief sought. *See M.A.*, 899 F.2d at 308. In the course of settling on an abuse-of-discretion standard of review, we related that the showing required by the BIA to satisfy the "reasonable likelihood" standard

> includes not only that there is a reasonable likelihood that the statutory requirements for the relief sought are satisfied, but also a reasonable likelihood that a grant of [any discretionary relief sought, such as asylum or a waiver of inadmissibility,] may be warranted as a matter of discretion.

*Id.* at 310 (emphasis and internal quotation marks omitted) (citing *Rodriguez-Vera*, 17 I. & N. Dec. at 107).

b.

Thereafter, in 1992, the BIA issued its *Coelho* decision — setting forth the more stringent reopening standard used against Mouns in the Reopening Denial and ratified by the Reconsideration Denial. *See In re Coelho*, 20 I. & N. Dec. 464 (BIA 1992). As the *Coelho* decision made clear, however, the more stringent standard was appropriate because of the particular negative circumstances of that case.

11

Specifically, Coelho was a noncitizen who had conceded removability from the United States based on his federal convictions of controlled substance offenses and who had concomitantly sought from the presiding IJ a discretionary waiver of inadmissibility under 8 U.S.C. § 1182(c). *See Coelho*, 20 I. & N. Dec. at 465. Despite observing that Coelho "appeared to be statutorily eligible for a waiver of inadmissibility," the IJ had denied Coelho's waiver request on the ground that he "did not show that a grant of relief was warranted in the exercise of discretion." *Id.* at 465-66. Coelho then appealed to the BIA, seeking reversal of the IJ's denial of a waiver of inadmissibility; alternatively, Coelho moved to reopen the IJ proceedings to present new evidence in support of his preexisting waiver request. *Id.* at 466.

The BIA first addressed Coelho's appeal from the IJ's denial of a waiver of inadmissibility and accepted that Coelho had established statutory eligibility for such relief. *See Coelho*, 20 I. & N. Dec. at 466-70. The BIA ultimately ruled, however, that a balancing of the positive factors (e.g., that Coelho had achieved some rehabilitation in prison) against the negative (the seriousness of his drug offenses) did not weigh in favor of an exercise of discretion to grant a waiver of inadmissibility. *Id.* at 470. Accordingly, the BIA resolved to dismiss Coelho's appeal from the IJ's denial of the waiver request. *Id.* at 466.

Next, the BIA addressed Coelho's alternative motion to reopen the IJ proceedings so that he could present new evidence, of further rehabilitation, in support of his request for a waiver of inadmissibility. *See Coelho*, 20 I. & N. Dec. at 470-74. Of course, the circumstances of Coelho's motion to reopen (seeking to present new evidence to the IJ in support of a preexisting waiver request) differed from the circumstances of the motion to

12

reopen that had been denied in *Rodriguez-Vera* under the "reasonable likelihood" reopening standard (seeking to request a waiver of inadmissibility from the IJ for the first time).    Indeed, the *Coelho* decision did not mention *Rodriguez-Vera*'s "reasonable likelihood" standard.

Instead, the *Coelho* decision devised a reopening standard to fit the circumstances presented.    In so doing, the BIA recognized that — because Coelho had "already established [statutory] eligibility to be considered for [a waiver of inadmissibility] and ha[d] already been provided the opportunity to apply for such relief" — "making a prima facie showing of [statutory] eligibility for the underlying relief being sought [was] largely irrelevant."    *See Coelho*, 20 I. & N. Dec. at 473.    The BIA also observed that "the issue [was] not simply whether there [was] 'new' evidence," for "there arguably always will be additional evidence" to support a waiver of inadmissibility request as a result of "the mere passage of time."    *Id.*    Rather, as the BIA saw it, the key question in deciding if Coelho should be awarded reopening was whether he had adequately shown by his new evidence that he warranted a waiver of inadmissibility as a matter of discretion.    *Id.* at 472-73.

From there, the *Coelho* decision specified the standard to be applied to motions to reopen "*in cases such as this*."    *See* 20 I. & N. Dec. at 473 (emphasis added).    Under that reopening standard, the movant must

> meet[] a heavy burden and present[] evidence of such a nature that the [BIA] is satisfied that if proceedings before the [IJ] were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case.

*Id.* (internal quotation marks omitted).  Alluding to its concurrent dismissal of Coelho's appeal from the IJ's denial of a waiver of inadmissibility, the BIA elaborated that its standard required it to deny Coelho's motion to reopen "if we conclude that our decision on the appeal would be the same even if the proffered evidence were already part of the record on appeal." *Id.*  The BIA then determined that Coelho failed to meet that "heavy burden" and thus denied the motion to reopen. *Id.* at 474 (internal quotation marks omitted).

c.

In 1996, the BIA issued its *L-O-G-* decision — on which Mouns now relies for his argument that the BIA erroneously used the *Coelho* reopening standard against him. *See In re L-O-G-*, 21 I. & N. Dec. 413 (BIA 1996).  The *L-O-G-* decision confirmed the general applicability of the "reasonable likelihood" standard to motions to reopen immigration proceedings, while also expounding on the limited applicability of the more stringent *Coelho* standard.

The *L-O-G-* decision concerned two noncitizens — L-O-G- and her 15-year-old daughter — who had previously applied for and been denied asylum and withholding of removal, and who were now seeking to reopen the IJ proceedings to apply for the first time for the discretionary relief of suspension of deportation pursuant to 8 U.S.C. § 1254(a)(1). *See L-O-G-*, 21 I. & N. Dec. at 413.[4]  Having found "no reason to deny reopening as a

---

[4] Prior to its repeal in 1996 (shortly after the BIA issued the *L-O-G-* decision), § 1254(a)(1) of Title 8 provided for the discretionary relief of suspension of deportation, available to a noncitizen "'of good moral character'" whose "deportation would cause (Continued)

14

matter of discretion," the BIA focused on the question of whether the movants made a prima facia showing of statutory eligibility for suspension of deportation. *Id.* at 415. There being no other dispute concerning statutory eligibility, the "critical issue" for the BIA was whether each movant had made a prima facie showing that "her deportation would result in extreme hardship to herself or to her United States citizen or lawful permanent resident spouse, child, or parent." *Id.*

In grappling with that question, the BIA observed not only that there were "no bright line tests for determining what constitutes extreme hardship and what does not," but also that there were "no easy rules for deciding what makes a prima facie case of such hardship and what does not." *See L-O-G-*, 21 I. & N. Dec. at 418. What was clear to the BIA, however, is that the "reasonable likelihood" standard is the generally applicable standard for motions to reopen — particularly where, as in *L-O-G-*, ruling on the motion "requires the exercise of judgment regarding eligibility for the relief sought." *See id.* at 418-20. It was also obvious to the BIA that the more stringent *Coelho* standard applies only in limited cases presenting "special, adverse considerations." *See id.* at 419-20. The BIA differentiated the standards by suggesting that the *Coelho* standard requires a showing that the "reasonable likelihood" standard does not, that being "a conclusive showing" of entitlement to the relief sought. *See id.* at 418-19.

---

'extreme hardship' to him or his family" and who "had been 'physically present in the United States for a continuous period of not less than seven years immediately preceding' the application for relief." *See Jaghoori v. Holder*, 772 F.3d 764, 767 (4th Cir. 2014) (quoting former 8 U.S.C. § 1254(a)(1)).

As for the "reasonable likelihood" standard, the *L-O-G-* decision recognized that where "ruling on a motion to reopen requires the exercise of judgment regarding eligibility for the relief sought, the [BIA] historically has not required a conclusive showing that, assuming the facts alleged to be true, eligibility for relief has been established." *See* 21 I. & N. Dec. at 418-19. "Rather," the BIA observed, "we have been willing to reopen 'where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.'" *Id.* at 419 (quoting *In re Sipus*, 14 I. & N. Dec. 229, 231 (BIA 1972)). The *L-O-G-* decision also underscored that "[i]n considering a motion to reopen, the [BIA] should not prejudge the merits of a case before the [movant] has had an opportunity to prove the case." *Id.* As such, the BIA explained:

> By finding that [a movant] has made out a prima facie case of [eligibility for the relief sought], we are not deciding that the [movant] should be granted [relief in the reopened proceedings] as a matter of law or discretion if the facts alleged are shown to be true. We are deciding only that there is a reasonable likelihood that the statutory requirements for the relief sought have been satisfied, and that there is a reasonable likelihood that relief will be granted in the exercise of discretion.

*Id.* (citing *M.A.*, 899 F.2d at 310 (similarly describing the "reasonable likelihood" standard as employed in *Rodriguez-Vera*, 17 I. & N. Dec. at 107)).

Turning to the more stringent *Coelho* standard, the *L-O-G-* decision specified *Coelho* as a case where the BIA has "emphasized the heavy burden of proof faced by [a noncitizen] seeking reopening" because "the facts warranted the strict imposition of such a burden." *See L-O-G-*, 21 I. & N. Dec. at 419. According to the *L-O-G-* decision, the particular facts warranting the "heavy burden" in *Coelho* included that the movant "had

16

already had an opportunity to fully present and litigate his request for [a discretionary waiver of inadmissibility under] 8 U.S.C. § 1182(c)" and that he simply "sought a remand for further consideration of the [preexisting] application." *Id.* at 419-20. The *L-O-G-* decision then articulated *Coelho*'s holding as being "that 'in cases such as this,' reopening should not be granted unless the [movant has] met the 'heavy burden' of showing that the new evidence presented 'would likely change the result in the case.'" *Id.* at 420 (quoting *Coelho*, 20 I. & N. Dec. at 473). Moreover, the *L-O-G-* decision indicated that cases such as *Coelho* were cases presenting "special, adverse considerations" that thus required "a conclusive showing" of eligibility for the relief sought. *See id.* at 418-20.

Helpfully, the *L-O-G-* decision elaborated that "[m]any motions to reopen, however, do not present the[] special, adverse considerations [presented by *Coelho*]." *See L-O-G-*, 21 I. & N. Dec. at 420. The BIA gave the example of a movant "seeking previously unavailable relief" who "has not had an opportunity to present her application before the [IJ]." *Id.* In circumstances like those, the BIA explained, it will apply the "reasonable likelihood" standard and "look to whether there is sufficient evidence proffered to indicate a reasonable likelihood of success on the merits, so as to make it worthwhile to develop the issues further at a full evidentiary hearing." *Id.*

Choosing the standard to apply to the reopening request lodged by L-O-G- and her daughter, the BIA recognized in *L-O-G-* that "[t]he case before us presents none of the more egregious factors present in such cases as [*Coelho*]." *See L-O-G-*, 21 I. & N. Dec. at 420 (further noting "[t]he absence of any dilatory tactics"). The BIA therefore applied the

17

"reasonable likelihood" standard and ultimately resolved to grant reopening. *Id.* at 420-22.[5]

d.

As far as we can tell from the BIA's reported decisions, since its 1996 decision in *L-O-G-*, the BIA has not revisited the matter of when it is appropriate to apply the "reasonable likelihood" standard and when it is instead appropriate to apply the more stringent *Coelho* standard. That is, each time it has adjudicated a motion to reopen, the BIA has simply opted to use one of those standards without acknowledging the other or explaining its choice between the two. Nevertheless, the standard selected by the BIA has — until Mouns's present case — largely been consistent with *L-O-G-*'s characterization of the "reasonable likelihood" standard as being generally applicable and the *Coelho* standard as being limited to cases presenting special, adverse considerations.

For example, in its 2000 decision in *In re S-V-*, 22 I. & N. Dec. 1306 (BIA 2000), the BIA utilized and discussed only the "reasonable likelihood" standard, plainly treating it as the generally applicable standard. There, noncitizen S-V- had been found removable following his convictions of Florida offenses including grand theft and robbery, and he was seeking to reopen his immigration proceedings to petition for the first time for asylum and

---

[5] Although the *L-O-G-* decision drew a dissent, there was no challenge to the applicability of the "reasonable likelihood" standard; rather, the dissent disagreed with the majority's conclusion that L-O-G- and her daughter satisfied that reopening standard. *See* 21 I. & N. Dec. at 422-26.

18

withholding of removal. *See S-V-*, 22 I. & N. Dec. at 1306-07. Invoking the "reasonable likelihood" standard, the BIA observed:

> We have found that a [reopening movant] demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied. We have not required a conclusive showing that eligibility for relief has been established. Rather, we have reopened proceedings where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.

*Id.* at 1308 (internal quotation marks omitted) (citing *L-O-G-*, 21 I. & N. Dec. at 418-19). The BIA then applied the "reasonable likelihood standard" and concluded that S-V- failed to make the necessary showing as to any of the relief sought. *Id.* at 1308-11 (recognizing, inter alia, that S-V- was barred from eligibility for withholding of removal as a noncitizen "convicted of a particularly serious crime").

Elsewhere, as in its 2007 decision in *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007), the BIA has used the *Coelho* standard. In that case, the BIA strongly indicated — without expressly stating — that special, adverse considerations justified doing so. Specifically, the BIA emphasized that noncitizen S-Y-G- had filed repeated motions to reopen in order to reapply for asylum and withholding of removal based on China's family planning policies, continued to present "largely cumulative" evidence, and "was previously found to have offered incredible testimony to gain immigration benefits." *See S-Y-G-*, 24 I. & N. Dec. at 251-53. Not surprisingly, the BIA then resolved that S-Y-G- was not eligible for reopening. *See id.* at 258-59 (explaining that because S-Y-G- had not satisfied the *Coelho* standard and was "still making the same argument she first offered in 1996," her latest motion to reopen was denied).

19

Similarly, this Court recognized the *Coelho* standard as the pertinent reopening standard in our 2014 decision in *Wanrong Lin v. Holder*, 771 F.3d 177 (4th Cir. 2014), upholding the BIA's denial of a motion to reopen.[6]  There, we briefly recited that a reopening movant "carries a 'heavy burden,'" in that "he or she must show that 'the new evidence offered would likely change the result in the case.'"  *See Wanrong Lin*, 771 F.3d at 183 (quoting *Coelho*, 20 I. & N. Dec. at 473).  In so doing, we neither mentioned the "reasonable likelihood" standard nor specified any special, adverse considerations justifying the use of the *Coelho* standard instead.  But in light of the following, that makes perfect sense:  there was no challenge in *Wanrong Lin* to the applicability of the *Coelho* standard; the *Coelho* standard had also been used by the BIA without apparent controversy in its *S-Y-G-* decision; *S-Y-G-* figured prominently in *Wanrong Lin*; and like *S-Y-G-*, *Wanrong Lin* involved a noncitizen who had filed repeated motions to reopen in order to reapply for asylum and withholding of removal based on China's family planning policies, who continued to present cumulative evidence, and who was previously found to lack credibility.  *See Wanrong Lin*, 771 F.3d at 180-83.[7]

---

[6] Aside from our published *Wanrong Lin* decision, we have invoked the *Coelho* standard only in opinions that were unpublished and thus nonprecedential.  *See, e.g.*, *Sanchez v. Sessions*, 698 F. App'x 740, 743 (4th Cir. 2017); *Ferman v. Holder*, 555 F. App'x 254, 255 (4th Cir. 2014).

[7] Although our *Wanrong Lin* decision did not say so, the administrative record confirms that the BIA itself had employed the *Coelho* standard and relied on *S-Y-G-* in denying the very motion to reopen at issue in *Wanrong Lin*.

B.

That brings us to Mouns's case and the BIA's use of the *Coelho* standard in its Reopening Denial of May 2021. The BIA therein pronounced that the *Coelho* standard applied and that Mouns thus had "a heavy burden to prove that if the proceedings [were] reopened with all the attendant delays, the new evidence offered would likely change the result in the case." *See* Reopening Denial 2 (internal quotation marks omitted) (citing *Coelho*, 20 I. & N. Dec. at 473). The BIA did not mention the "reasonable likelihood" standard or the possibility of utilizing it instead. Moreover, the BIA did not acknowledge that the *Coelho* standard is limited to cases presenting special, adverse considerations, nor did the BIA expressly state or in any way suggest that there were special, adverse considerations presented by Mouns's case.

Rather, the BIA swiftly proceeded to consider whether Mouns had satisfied the *Coelho* standard and established eligibility for the relief sought — asylum, withholding of removal, and protection under the CAT. *See* Reopening Denial 2-3.[8] Of course, in seeking reopening, Mouns relied on the statutory "changed country conditions" exception to the usual time and number limits on motions to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii) (requiring new and material evidence of changed country conditions, i.e., evidence that "is material and was not available and would not have been discovered or presented at the previous proceeding"). The BIA recognized that the "changed country conditions"

---

[8] Distinct from asylum and withholding of removal, CAT protection requires a showing "that it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal." *See* 8 C.F.R. § 208.16(c)(2).

21

exception expressly applies where a movant is seeking asylum and withholding of removal, and it "[a]ssum[ed] arguendo" that the exception applies where a movant is seeking CAT protection. *See* Reopening Denial 1, 3. Additionally, the BIA easily accepted that Mouns's evidence of the civil war and other changed country conditions in Yemen was genuinely new and qualitatively different from the evidence he had previously proffered. *Id.* at 2 (observing that "[t]he evidence accompanying [Mouns's] motion reflects that conditions in Yemen have changed since [he] last appeared before an [IJ] more than 20 years ago"). The BIA questioned, however, whether the evidence was material to the claims Mouns wished to pursue and sufficiently demonstrated his entitlement to relief. *Id.*

The BIA's resulting claim-by-claim analysis began — and ended — with the issue of whether Mouns had made a conclusive showing of *statutory* eligibility for the relief sought. *See* Reopening Denial 2-3. As to each form of relief, the BIA exercised its judgment and determined that he had not. That is, the BIA concluded that Mouns failed to show "a prima facie well-founded fear or clear probability of" persecution for purposes of asylum and withholding of removal, and that he further failed to "demonstrate[] prima facie eligibility for CAT protection." *Id.* at 3. Accordingly, the BIA denied Mouns's motion to reopen. *Id.* at 4.

In his subsequent request for reconsideration of the Reopening Denial, Mouns contended that the BIA had erred both by failing to apply the correct reopening standard and by improperly diminishing and disregarding his evidence. As for the standard-related argument, Mouns articulated that instead of utilizing the *Coelho* standard and thus requiring him to make a conclusive showing of eligibility for the relief sought, the BIA

22

should have used the "reasonable likelihood" standard and allowed him to simply demonstrate a reasonable likelihood that he would be granted relief at a reopened hearing. For support of that contention, Mouns invoked the BIA's own *L-O-G-* decision.

Taking up Mouns's standard-related argument in its Reconsideration Denial of March 2022, the BIA described that contention as being that it had erred in the Reopening Denial "because it did not apply the correct standard for determining whether [Mouns] made a prima facie showing of relief as required for a motion to reopen." *See* Reconsideration Denial 2. The BIA's curt response was, "We disagree." *Id.* In rendering its response, the BIA did not address or even acknowledge either its *L-O-G-* decision or the "reasonable likelihood" standard raised by Mouns. Rather, the BIA merely reiterated, as "stated in [the Reopening Denial]," that Mouns had "a heavy burden to prove that if the proceedings [were] reopened with all the attendant delays, the new evidence offered would likely change the result in the case." *Id.* (internal quotation marks omitted). The BIA once again cited *Coelho*, and it additionally cited its *S-Y-G-* decision and this Court's decision in *Wanrong Lin*.

After ratifying the Reopening Denial's use of the *Coelho* standard, the BIA endorsed the Reopening Denial's conclusion that Mouns failed to "carry his burden to establish [that the evidence presented with his motion to reopen] would likely change the outcome of the proceedings." *See* Reconsideration Denial 2. Ultimately, the BIA rejected all of Mouns's contentions of error in the Reopening Denial and therefore denied his request for reconsideration. *Id.* at 2-3.

23

C.

In these circumstances, we agree with Mouns that the BIA abused its discretion in the Reconsideration Denial by flouting its own precedents and ratifying the use of the *Coelho* standard in the Reopening Denial. *See Narine*, 559 F.3d at 249 (specifying that the BIA abuses its discretion when it "act[s] arbitrarily, irrationally, or contrary to law"). Moreover, we could say that it was reversible error alone for the BIA to simply dig in and declare the *Coelho* standard to be applicable, without giving any explanation as to why that was so and without even acknowledging the *L-O-G-* decision and "reasonable likelihood" standard raised by Mouns in his request for reconsideration. *See Hussain v. Gonzales*, 477 F.3d 153, 155 (4th Cir. 2007) (recognizing that an abuse of discretion occurs when the BIA "fails to offer a reasoned explanation for its decision, distorts or disregards important aspects of the [noncitizen's] claim" (internal quotation marks omitted)). In any event, we cannot think of any reasoned explanation for the use of the *Coelho* standard that the BIA could have offered.

1.

Essentially, the BIA treated the *Coelho* standard as the generally applicable reopening standard. But that was contrary to its *L-O-G-* decision, wherein the BIA confirmed that the "reasonable likelihood" standard is the generally applicable reopening standard and that the more stringent *Coelho* standard is limited to cases presenting special, adverse considerations. *See L-O-G-*, 21 I. & N. Dec. at 418-20 (explaining that the particular facts warranting the "heavy burden" in *Coelho* included that the movant "had already had an opportunity to fully present and litigate his request for [a discretionary

24

waiver of inadmissibility]" and that he simply "sought a remand for further consideration of the [preexisting] application"); *see also Coelho*, 20 I. & N. Dec. at 473 (emphasizing that its standard was specially devised for "cases such as this"); *S-Y-G-*, 24 I. & N. Dec. at 251-53 (indicating that the application of the *Coelho* standard was justified because the movant had filed repeated motions to reopen, continued to present "largely cumulative" evidence, and "was previously found to have offered incredible testimony").

Importantly, the BIA did not identify or even suggest any special, adverse considerations presented by Mouns's case that could justify the use of the *Coelho* standard, such as the abusive filing of motions to reopen that the BIA had found troubling in *Coelho* and *S-Y-G-*. To the contrary, the BIA easily accepted in its Reopening Denial that Mouns's motion to reopen was supported by genuinely new evidence, and it then engaged in a claim-by-claim analysis to determine whether that evidence was material and sufficiently demonstrated statutory eligibility for the relief sought.

Furthermore, the statutory eligibility issues considered in the Reopening Denial — including the questions of whether Mouns had sufficiently demonstrated a "well-founded fear" and "clear probability" of persecution for purposes of asylum and withholding of removal — necessitated an exercise of the BIA's judgment. *Cf. L-O-G-*, 21 I. & N. Dec. at 418-19 (recognizing that a similar exercise of judgment was required to determine whether L-O-G- and her daughter had established statutory eligibility for suspension of deportation by sufficiently demonstrating "extreme hardship"). Consequently, the BIA's analysis of Mouns's statutory eligibility was just the type of analysis deemed by *L-O-G-* to be well suited for the "reasonable likelihood" standard. *See id.* (recognizing that the

25

"reasonable likelihood" standard usually applies where "ruling on a motion to reopen requires the exercise of judgment regarding eligibility for the relief sought").

Without explanation or legitimate reason, however, the BIA instead utilized the more stringent *Coelho* standard in the Reopening Denial and then stubbornly ratified that decision in the Reconsideration Denial. As such, the BIA defied its own precedents and thereby abused its discretion.

2.

Although the Attorney General, as the respondent in this Court, seeks to sway us otherwise, we are not convinced by his arguments. The first contention of note is based on the Reconsideration Denial's citation to our *Wanrong Lin* decision (along with its own *Coelho* and *S-Y-G-* decisions) in ratifying the Reopening Denial's use of the *Coelho* standard. According to the Attorney General, the BIA is bound by *Wanrong Lin* to treat the *Coelho* standard as the generally applicable reopening standard in cases within this Circuit, and the Reconsideration Denial's citation to *Wanrong Lin* was an acknowledgment by the BIA that is so.

To be sure, *Wanrong Lin* invoked the *Coelho* standard without mentioning the "reasonable likelihood" standard or specifying any special, adverse considerations presented by Wanrong Lin's case. *See Wanrong Lin*, 771 F.3d at 183 (briefly reciting that a reopening movant "carries a 'heavy burden,'" in that "he or she must show that 'the new evidence offered would likely change the result in the case'" (quoting *Coelho*, 20 I. & N. Dec. at 473)). But no fair reading of *Wanrong Lin* leads to the conclusion that we were somehow holding that the *Coelho* standard is the generally applicable reopening standard

26

or that we were otherwise binding the BIA to treat it as such in cases within this Circuit. Rather, it is clear that *Wanrong Lin* was simply reciting what we understood to be the BIA standard relevant to the particular matter before us — a standard that went unchallenged and that there was good reason to apply because of the many similarities between *Wanrong Lin* and *S-Y-G-*.

Another of the Attorney General's unpersuasive arguments is based on the fact that in the BIA decisions applying the *Coelho* standard (*Coelho* and *S-Y-G-*), the relief sought had previously been denied. But in the BIA decisions applying the "reasonable likelihood" standard (*Rodriguez-Vera*, *L-O-G-*, and *S-V-*), the relief sought was being pursued for the first time. Moreover, to illustrate cases that "do not present the[] special, adverse considerations [presented by *Coelho*]," the BIA gave the example in *L-O-G-* of a movant "seeking previously unavailable relief" who "has not had an opportunity to present her application before the [IJ]." *See L-O-G-*, 21 I. & N. Dec. at 420.

As the Attorney General would have it, the *Coelho* standard is therefore applicable every time a movant seeks to reopen his immigration proceedings to reapply for the same relief that he was previously denied. Under that theory, the BIA properly used the *Coelho* standard in the Reopening Denial because Mouns was seeking to reapply for the previously denied relief of asylum and withholding of removal.

The Attorney General's theory cannot, however, withstand scrutiny. First of all, the special, adverse considerations justifying the use of the *Coelho* standard in both *Coelho* and *S-Y-G-* went beyond the mere fact that the movants were seeking to pursue previously denied relief. *See L-O-G-*, 21 I. & N. Dec. at 420 (referring to the "egregious factors" and

27

"dilatory tactics" present in *Coelho*). Moreover, if the BIA meant to rule that there are special, adverse considerations justifying the use of the *Coelho* standard every time a reopening movant seeks to pursue previously denied relief, the BIA never would have had to talk about "special, adverse considerations" at all. Rather, it simply could have said that if the relief sought was previously denied, the *Coelho* standard applies.

And perhaps most importantly, it would be nonsensical for the *Coelho* standard to apply every time a reopening movant — like Mouns — seeks to reapply for asylum and withholding of removal based on changed country conditions. A flat rule that such cases always present special, adverse considerations would be wholly at odds with the special, favorable treatment that Congress has bestowed upon them. Again, by statute, a motion to reopen is not subject to the usual time and number limits where the movant is pursuing asylum or withholding of removal based on changed country conditions. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). And the Attorney General's own regulations specify that the exception extends to reopening movants who raise changed country conditions to "*reapply for*" previously denied relief. *See* 8 C.F.R. § 1003.2(c)(3)(ii) (emphasis added). In these circumstances, the Attorney General has failed to convince us that the BIA acted appropriately in the Reconsideration Denial by ratifying the Reopening Denial's use of the *Coelho* standard against Mouns.

3.

To the extent that Mouns suggests that our *M.A.* decision establishes the "reasonable likelihood" standard as the generally applicable reopening standard, we disagree with him. Similar to *Wanrong Lin*'s recitation of the *Coelho* standard, *M.A.* simply recognized the

28

"reasonable likelihood" standard as the BIA standard pertinent to the matter at hand. *See M.A.*, 899 F.2d at 310 (relating, without questioning, that the "reasonable likelihood" standard requires a reopening movant to show a reasonable likelihood both "that the statutory requirements for the relief sought are satisfied" and "that a grant of [any discretionary relief sought] may be warranted as a matter of discretion" (emphasis and internal quotation marks omitted) (citing *Rodriguez-Vera*, 17 I. & N. Dec. at 107)). The general applicability of the "reasonable likelihood" standard is established by the BIA's own decisions, including *Rodriguez-Vera* and *L-O-G-* — not by our decision in *M.A.*

We further disagree with Mouns's assertion that the special, adverse considerations that caused the BIA to devise the more stringent standard in *Coelho* included the movant's criminal history. That theory is belied by the plain text of both *Coelho* and *L-O-G-*, blaming the *Coelho* standard entirely on Coelho's abusive litigation tactics. Moreover, Mouns's theory is inconsistent with *Rodriguez-Vera* and *S-V-*, wherein the movants also had significant criminal histories — involving murder, grand theft, and robbery — yet the BIA applied the "reasonable likelihood" standard.

4.

Finally, we emphasize that our ruling today is solely that the BIA abused its discretion in the Reconsideration Denial by flouting its own precedents and ratifying the use of the *Coelho* standard in the Reopening Denial. In other words — having specified the "reasonable likelihood" standard as its generally applicable reopening standard, and having limited the *Coelho* standard to cases presenting special, adverse considerations —

29

the BIA cannot now arbitrarily use the *Coelho* standard as if it were the generally applicable one.[9]

We do not — and have not been called upon to — decide any other issues, including the overall propriety of the "reasonable likelihood" and *Coelho* standards as devised by the BIA in its decisions, or the propriety of the Attorney General's regulatory scheme and its broad grant of discretion to the BIA with respect to motions to reopen.  Those include issues on which we and other federal courts have traditionally deferred to the agency pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but on which we may no longer accord *Chevron* deference under the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron*).  We thus leave a bevy of questions for another day.

---

[9] Notably, other courts of appeals have taken different views of the "reasonable likelihood" and *Coelho* standards.  *See, e.g.*, *Fonseca-Fonseca v. Garland*, 76 F.4th 1176, 1183 (9th Cir. 2023) (concluding that the "reasonable likelihood" standard applies to the statutory eligibility inquiry and that the *Coelho* standard applies to any discretionary entitlement inquiry); *Caballero-Martinez v. Barr*, 920 F.3d 543, 548 (8th Cir. 2019) (indicating that the *Coelho* standard applies whenever the relief sought was previously denied); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320-21 (6th Cir. 2018) (suggesting that the "reasonable likelihood" and *Coelho* standards are one and the same).

III.

Pursuant to the foregoing, we grant Mouns's petition for review, vacate the BIA's Reconsideration Denial, and remand for such other and further proceedings as may be appropriate.

*PETITION GRANTED*