**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-2306**

_____

WILMER ALEXANDER MARTINEZ,

Petitioner,

v.

PAMELA JO BONDI, Attorney General

Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued:  January 28, 2025                               Decided:  July 31, 2025

_____

Before NIEMEYER, BENJAMIN and BERNER, Circuit Judges.

_____

Petition denied in part and granted in part; vacated in part and remanded by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge Berner joined.

_____

**ARGUED:**  James Doyle Brousseau, BROUSSEAU & LEE, PLLC, Falls Church, Virginia, for Petitioner.  Robert Paul Coleman, III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Principal Deputy Assistant Attorney General, Jennifer R. Khouri, Senior Litigation Counsel, Sarah E. Witri, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Petitioner Wilmer Alexander Martinez seeks review of a Board of Immigration Appeals (BIA) order determining that his proposed particular social group (PSG) is non-cognizable; that he failed to prove a nexus between the harm he endured and his relationship with his mother; and that he failed to make a prima facie case for cancellation of removal. For the reasons explained below, Martinez's petition is denied in part and granted in part, and the BIA's order is vacated in part and remanded.

## I.

## A.

The relevant facts are undisputed. Martinez is a 44-year-old native and citizen of Honduras. J.A. 171.[1] Between 1991 and 1992, Martinez's mother's husband sold family land to Nandin Troches[2] without proper authorization and for less than market value. Martinez's mother hired lawyers, successfully regained control of her property, and evicted Troches. Thereafter, Troches began threatening the family through third parties and intimidating the family by riding past the family home on a bicycle. On an unknown date

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA). Page numbers refer to the "J.A. #" pagination.

[2] Although the IJ and the BIA refer to the purchaser as Nandin Troches, Martinez's mother refers to him as Donaldo Trochas in her affidavit, and Martinez's sister refers to him as Donaldo Troches. *Compare* J.A. 4, *with* J.A. 90, 211, 214. For consistency with the IJ and the BIA, we refer to him as Nandin Troches.

2

in 1992, Troches confronted then-twelve-year-old Martinez, "intimidated him," and said negative things about his mother. J.A. 88, 175.

Martinez's mother fled Honduras in 1993. Between 1993 and 1994, Martinez relocated twice within Honduras. At an unknown time, when Martinez's mother and uncle returned to Honduras to visit, Troches saw them and "threatened them that he would come back with a pistol." J.A. 176. None of Martinez's family members were ever physically harmed, and Martinez himself was not threatened again after the 1992 incident.

Martinez fled Honduras and entered the United States illegally in 2003 when he was 23 years old. He was removed to Honduras in 2013 and remained in Honduras for five months. During those five months, Troches never contacted Martinez, but Martinez, his brother-in-law, and his sister were assaulted and robbed by three unknown, armed men. Martinez was paroled into the United States on October 9, 2013, and has not had any contact with Troches since.

B.

After entering the United States in 2003, Martinez was convicted of driving while under the influence in 2005 and 2007. In 2006, the Department of Homeland Security (DHS) filed a notice to appear, charging Martinez with removability as "an alien present in the United States without being admitted or paroled[.]" *See* J.A. 412–15. Martinez failed to appear for his hearing and was ordered removed in absentia. In 2008 or 2009, Martinez was arrested for being drunk in public. In April 2013, DHS apprehended Martinez and took him into custody. Martinez filed a motion to reconsider the in absentia removal order and to reopen his removal proceedings. When both of those motions were

denied, he filed a motion to reconsider. Martinez was removed to Honduras before the adjudication of his motion to reconsider.

In August 2013, an IJ granted Martinez's motion to reconsider, vacated the removal order, and reopened removal proceedings. As a result, DHS facilitated Martinez's return to the United States, and in October 2013, he was paroled back into the country. In October 2016, Martinez was charged with misdemeanor "drunk in public," for which he paid a fine. J.A. 16.

In the reopened proceedings, Martinez filed an application for asylum and withholding of removal under the Convention Against Torture (CAT) on the basis that he was a victim of past persecution and maintains a well-founded fear of future persecution due to his membership in two particular social groups: (1) immediate family members of Elsa Maribel Martinez Fuentes, his mother, and (2) Hondurans who return to Honduras after having resided in the United States for multiple years. After hearing testimony in support of his application, the IJ issued an oral decision denying Martinez's applications.

Martinez appealed his case to the BIA. He challenged the denial of asylum, moved for remand based on newly available relief, and moved for administrative closure based on a pending visa petition filed by his mother, who is a lawful permanent resident. In a single-member opinion, the BIA affirmed the IJ's decision, denied Martinez's motions, and dismissed the appeal. This appeal followed. We have jurisdiction under 8 U.S.C. § 1252.

II.

4

In his petition for review, Martinez argues that the BIA erred as a matter of law in concluding that his proposed PSG—Hondurans who return to Honduras after having resided in the United States for multiple years—lacked particularity. We agree with the BIA's determination.

## A.

We review the BIA's determination of whether a PSG is legally cognizable *de novo*. *Garcia v. Garland*, 73 F.4th 219, 229 (4th Cir. 2023) (citing *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014)). When the BIA "issue[s] its own detailed opinion affirming the IJ with further reasoning of its own but without expressly adopting the IJ's opinion," we "focus our review on the BIA's decision." *Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020). "We consider the BIA's legal conclusions de novo and determine whether substantial evidence supports its factual findings." *Chicas-Machado v. Garland*, 73 F.4th 261, 264–65 (4th Cir. 2023) (citing *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015)). We treat factual findings as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Perez-Vasquez v. Garland*, 4 F.4th 213, 220 (4th Cir. 2021) (quoting *Chen v. Holder*, 742 F.3d 171, 178 (4th Cir. 2014)).

## B.

"A 'particular social group' will qualify as a 'statutorily protected status' that can serve as the basis for a withholding of removal claim when it satisfies three criteria[:]" (1) the members must "share common, immutable characteristics"; (2) "those characteristics must afford group members certain 'social visibility' or 'social distinction' "; and (3) "the group must be 'defined with sufficient particularity to delimit its membership.' " *Garcia*,

73 F.4th at 229–30 (quoting *Lizama v. Holder*, 629 F.3d 440, 447 (4th Cir. 2011)); *see also Amaya v. Rosen*, 986 F.3d 424, 427 (4th Cir. 2021) (same).

"Although the particularity requirement does not appear in the statute, the [BIA] set forth the requirement to ensure that a [PSG] has 'definable boundaries' so that it is sufficiently clear who is in and out of the group." *Herrera-Martinez v. Garland*, 22 F.4th 173, 181 (4th Cir. 2022) (quoting *Amaya*, 986 F.3d at 429). This court has rejected PSGs that share only "amorphous characteristics that neither provide an adequate benchmark for determining group membership . . . nor embody concrete traits that would readily identify a person as possessing those characteristics." *Amaya*, 986 F.3d at 429 (quoting *Lizama*, 629 F.3d at 447 (holding that wealth, Americanization, opposition to gangs, and criminal history were amorphous characteristics)). Applicable here, in *Moreno-Osorio v. Garland*, 2 F.4th 245 (4th Cir. 2021), this court rejected the PSG of "returning migrants from the United States," finding that the group was "precisely the type of amorphous and overbroad group that cannot satisfy the particularity requirement." *Id.* at 255 (citing *Amaya*, 986 F.3d at 429).

The BIA correctly determined that Martinez's proposed PSG of Hondurans returning to Honduras after having resided in the United States for multiple years lacked particularity and was therefore not cognizable. As explained in *Moreno-Osorio*, the term "return" is broad and undefined. *See id.* at 255–56. "[R]eturn" can be read to include "not just deportees, but also those individuals who . . . are 'returning' to Honduras pursuant to a grant of voluntary departure, or who are simply 'returning' to Honduras temporarily to visit their family or friends." *Id.* at 255. Although Martinez has limited his proposed PSG

6

to "Hondurans who resided in the U.S. for multiple years," both the number of years and the circumstances of the return lack particularity. Any Honduran who has lived in the United States for two years or more could return to Honduras, under any circumstances and for any amount of time, and be eligible for membership in this proposed PSG. This is "simply too imprecise and undefined to inform our particularity analysis," as "it provides 'no adequate benchmark for determining group membership.' " *See id.* (quoting *Amaya*, 986 F.3d at 429).

Because "it is not 'evident from [Martinez's] group's description who is in and who is not,' " Martinez's proposed PSG fails the particularity requirement as a matter of law. *See id.* at 256 (quoting *Amaya*, 986 F.3d at 434). Accordingly, we find no error in the BIA's conclusion that this PSG is not cognizable.

## III.

Next, Martinez argues that the BIA erred in applying *Velasquez v. Sessions*, 866 F.3d 188 (4th Cir. 2017), and finding that he failed to prove a nexus between his relationship with his mother and the threats he received from Troches. Because substantial evidence supports the BIA's decision, we find no reversible error.

## A.

Whether an applicant met the nexus requirement is a factual finding, requiring us to "uphold the [BIA]'s finding unless no rational factfinder could reach the same conclusion." *Toledo-Vasquez v. Garland*, 27 F.4th 281, 286 (4th Cir. 2022) (quoting *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 824 (4th Cir. 2020)). We therefore review "whether the Board's

conclusion is 'supported by reasonable, substantial, and probative evidence.' " *Id.* (quoting *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017)). Substantial evidence is a "highly deferential" standard of review that requires us to affirm if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (first quoting *Nasrallah v. Barr*, 590 U.S. 573, 583 (2020); and then quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).

## B.

An asylum-seeker must demonstrate that (1) he "has a well-founded fear of persecution"; (2) his fear "arises 'on account of' membership in a protected social group"; and (3) "the threat is made by an organization that the Honduran government 'is unable or unwilling to control.' " *Velasquez*, 866 F.3d at 194 (quoting *Hernandez-Avalos*, 784 F.3d at 949). A family can be a particular social group. *See Crespin-Valladares v. Holder*, 632 F.3d 117, 124–25 (4th Cir. 2011); *Hernandez-Avalos*, 784 F.3d at 949 ("[M]embership in a nuclear family qualifies as a protected ground for asylum purposes.").

"[I]t is well-settled that an applicant establishes the required nexus when []he demonstrates that [his] proposed protected status 'was or will be a central reason for [his] persecution.' " *Chicas-Machado*, 73 F.4th at 269 (quoting *Alvarez Lagos v. Barr*, 927 F.3d 236, 250 (4th Cir. 2019)). This inquiry does not "depend on the *ultimate goal* of the persecutors or on *why* the protected ground led them to persecute an applicant. Instead, the BIA and reviewing courts consider only whether the applicant can demonstrate that the persecution was 'on account of' a protected ground." *Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)). A petitioner need not show that his family ties "provide the central or

8

even a dominant central reason for [his] persecution." *Velasquez*, 866 F.3d at 194 (quoting *Hernandez-Avalos*, 784 F.3d at 949). "Rather, [he] 'must demonstrate [only] that these ties are more than an incidental, tangential, superficial, or subordinate reason for [his] persecution." *Id.* (quoting *Hernandez-Avalos*, 784 F.3d at 949) (second alteration in original).

An noncitizen "with a well-founded fear of persecution supported by concrete facts [is] not eligible for asylum if those facts indicate only that [he] fears retribution over purely personal matters." *Id.* (first quoting *Huaman-Cornelio v. Bd. of Immigration Appeals*, 979 F.2d 995, 1000 (4th Cir. 1992); and then citing *Jun Ying Wang v. Gonzales*, 445 F.3d 993, 998–99 (7th Cir. 2006) (stating "[t]his circuit and others, however, have repeatedly held that a personal dispute cannot give rise to a claim for asylum"; collecting cases)). "[E]very threat that references a family member is [not] made on account of family ties." *Id.* (alteration in the original) (quoting *Hernandez-Avalos*, 784 F.3d at 950 n.7). As such, we have regularly rejected nexus arguments when the record does not compel the conclusion that the petitioner was targeted for a family threat but instead supports alternate explanations for alleged persecution. *See Toledo-Vasquez*, 27 F.4th at 288 (rejecting nexus argument that petitioner was targeted for her family relationship when the record supported that she was instead targeted for intervening in her sister's abusive relationship); *Cedillos-Cedillos*, 962 F.3d at 820–26 (rejecting nexus argument that petitioner was targeted based on his family relationship with his brother when the record supported that he was targeted for witnessing his brother's murder).

9

Substantial evidence supports a finding that Troches targeted Martinez due to a personal dispute over land ownership, rather than his relationship with his mother. During the IJ hearing, Martinez was asked why Troches threatened his family. J.A. 175. He answered, "[b]ecause he wanted to stay with the property, which he had purchased for very little." *Id.* During the property dispute, Troches "would pass by with his bicycle in front of [Martinez's] grandmother's house . . . while [Martinez's] mother was trying to fight to get back the house" where the family had lived. J.A. 174. When Troches approached Martinez in 1992, he "said some things" about Martinez's mother, after which Martinez was not threatened again. J.A. 175, 177.

In her affidavit, Martinez's mother further affirmed Troches' motives, explaining that Troches had been removed from the property pursuant to a court order and that he "was not happy with [her] or [her] children because of [that] decision. He became very bitter and made all kinds of threats against [her] and [her] children." J.A. 211. She explained that she feared for Martinez's safety because Troches "continues to be a threat to [herself] and [her] whole family due to his losing the house." J.A. 212.

Accordingly, the record supports a conclusion that Martinez was targeted due to the land dispute, and his nexus arguments fail. We therefore find no error.

IV.

Finally, Martinez challenges the BIA's denial of his motion to remand for reconsideration of his application for cancellation of removal. Martinez contends that the

10

BIA erroneously applied a heightened standard for demonstrating prima facie eligibility. We agree.

### A.

Although Martinez requests a remand in his appeal to the BIA, his request is best construed as a motion to reopen, as he seeks consideration of his application for cancellation of removal based on new circumstances. *See Gonzalez v. Garland*, 16 F.4th 131, 145–46 (4th Cir. 2021) ("[A] request to reopen proceedings results from changed circumstances and specifically contemplates that a[] [noncitizen] will do so 'for the purpose of submitting an application for relief[.]' "(emphasis omitted) (quoting *Obioha v. Gonzales*, 431 F.3d 400, 408 (4th Cir. 2005)); 8 C.F.R. § 1003.2(c)(1). We therefore review the BIA's denial of the motion for an abuse of discretion. *Obioha*, 431 F.3d at 408.

"The BIA errs 'when it. . . distorts or disregards important aspects of the [noncitizen's] claims.' " *Chicas-Machado*, 73 F.4th at 265 (quoting *Jian Tao Lin v. Holder*, 611 F.3d 228, 235, 237 (4th Cir. 2010)). When reviewing BIA decisions, "it is 'our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder.' " *Cortes v. Garland*, 105 F.4th 124, 135 (4th Cir. 2024) (quoting *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011)). In its opinion, the BIA "must demonstrate that it considered all the evidence presented and must articulate a 'cogent' basis supporting any conclusion that the evidence was insufficient." *Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021) (quoting *Orellana v. Barr*, 925 F.3d 145, 151 (4th Cir. 2019)). "The Board abuses its discretion when it ignores important evidence supporting an applicant's claim or misapplies the law." *Id.* (citing *Zavaleta-Policiano v.*

11

*Sessions*, 873 F.3d 241, 248 (4th Cir. 2017)). However, "[t]he Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

B.

A noncitizen "is eligible for cancellation of removal only if" he (1) "has been physically present in the United States for a continuous period of not less than 10 years" before he applies; (2) "has been a person of good moral character during such period"; (3) "has not been convicted of certain criminal offenses"; and (4) "establishes that removal would result in exceptional and extremely unusual hardship to [a] spouse, parent or child" who is a United States citizen or lawful permanent resident. *Wilkinson v. Garland*, 601 U.S. 209, 213 (2024) (citing 8 U.S.C. § 1229b(b)(1)(A)–(D)).

Where, as here, a cancellation of removal is sought through a motion to reopen, a movant must "make out a prima facie case for relief to qualify for reopening, and [] the BIA can then exercise its discretion to grant or deny the motion." *Mouns v. Garland*, 113 F.4th 399, 404 (4th Cir. 2024) (quoting 8 C.F.R. § 1003.2(a) (cleaned up)). In an order addressing a motion to reopen, the BIA addresses "(1) whether the movant has demonstrated statutory eligibility for the relief sought; and (2) where the relief sought is discretionary rather than mandatory, whether the movant has demonstrated entitlement to a discretionary grant of that relief." *Id.* at 404–05 (quoting *INS v. Abudu*, 485 U.S. 94, 104–05 (1988)) (observing that, to deny a motion to reopen, the BIA "may hold that the movant has not established a prima facie case [of statutory eligibility] for the underlying substantive relief sought," or, "in cases in which the ultimate grant of relief is

12

discretionary," it "may leap ahead . . . and simply determine that . . . the movant would not be entitled to the discretionary grant of relief"). "[T]he controlling statute mandates that a 'motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.' " *Id.* at 405 (quoting 8 U.S.C. § 1229a(c)(7)(B)). The BIA may also consider whether a movant has complied with these statutory requirements and deny a motion to reopen accordingly.

The BIA has set forth multiple standards for demonstrating prima facie eligibility for the relief sought. *See Mouns*, 113 F.4th at 401, 412 (distinguishing stringent standard set forth in *In re Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992), "requiring the movant to show that 'the new evidence offered would likely change the result in the case,' " from "reasonable likelihood" standard set forth in *In re L-O-G-*, 21 I. & N. Dec. 413, 418–20 (B.I.A. 1996)). Under the reasonable likelihood standard, "[w]here a[] [noncitizen] is seeking previously unavailable relief and has not had an opportunity to present her application before the Immigration Judge, the Board will look to whether there is sufficient evidence proffered to indicate a reasonable likelihood of success on the merits, so as to make it worthwhile to develop the issues further at a full evidentiary hearing." *In re L-O-G-*, 21 I. & N. at 420. Pursuant to 8 C.F.R. § 1240.8(d), an applicant "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion."

Although the BIA may "leap ahead" and determine that a movant is not entitled to discretionary relief, before or without holding that a movant has established a prima facie case of statutory eligibility, the BIA did neither here. *See Abudu*, 485 U.S. at 104–05.

13

Instead, the BIA found that Martinez did not establish his eligibility for discretionary relief and as such, did not demonstrate prima facie eligibility. Martinez argued that he could establish eligibility for cancellation of removal. 8 U.S.C. § 1229(b)(1)(A)–(D). He provided information about his 2016 drunk in public conviction and contextualized his criminal history; presented evidence about qualifying family members, such as his daughter's birth certificate and medical records for his mother; and noted that he had steady employment and diligently paid his taxes, as evidenced by his tax returns. He generally noted that he "has not committed any crimes involving moral turpitude that would affect his eligibility for cancellation of removal and there are no bars to him demonstrating good moral character." *See* J.A. 66. It is not apparent from the BIA's opinion whether it considered *any* of this evidence. *See* J.A. 5. Nor is it clear whether the BIA made a determination on Martinez's discretionary eligibility.

Accordingly, as it appears Martinez set forth evidence that the BIA did not consider and which was not previously presented to the IJ—the BIA abused its discretion by denying Martinez's motion to reopen.

V.

For the reasons explained above, we affirm the BIA's denial of Martinez's asylum application. We vacate the BIA's denial of Martinez's motion to reopen and remand to the BIA for further proceedings consistent with this opinion.

*PETITION DENIED IN PART AND GRANTED IN PART;*
*VACATED IN PART AND REMANDED*

14